Bradford S. Magill,
Plaintiff Below, Appellant,

*vs.*

North American Refractories Company, et al.,
Defendants Below, Appellees.

Bradford S. Magill,
Plaintiff Below, Appellant,

*vs.*

North American Refractories Company, et al.,
Defendants Below, Appellees.

*Supreme Court on Appeal, December 28, 1956.*

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, for appellant.

*William Prickett* and *William Prickett, Jr.,* Wilmington, for appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: The question before us is a narrow question of statutory construction. Section 219 of the General Corporation Law requires the preparation and posting, ten days before every election of directors, of "a complete list of the stockholders entitled to vote at said election, arranged in alphabetical order". 8 *Del.C.* § 219. Is this list required to show, in addition to the name of each stockholder, the number of shares held by him and his address?

The facts relating to the history of this litigation need not be stated in detail. It has its origin in the attempt of the plaintiff, a stockholder of the defendant corporation, to obtain inspection of the stock ledger, and the resistance of the corporation to this attempt. For our present purpose the motives of the parties and the mutual recriminations found in the record and the briefs do not concern us.

The annual meeting of stockholders of the corporation was set for May 1. Ten days prior thereto the corporation prepared and deposited at the place of election an alphabetical list of stockholders entitled to vote. This list was a list of names only, without addresses or numbers of shares held.

Plaintiff, learning of this, filed suit in the court below for a declaratory judgment that the list did not comply with the law, and for injunctive relief. Injunctive relief was denied. The meeting was held and the management candidates were declared elected. Plaintiff

then filed a supplemental complaint to review the legality of the election and for other relief. The actions were consolidated. Cross motions for summary judgment were filed, and the case was heard by the Vice Chancellor on depositions and affidavits. He held that the list filed complied with the statute, and that the election of the management directors was legal. He accordingly granted defendants' motion. Plaintiff appeals.

Section 219 of the *General Corporation Law, 8 Del.C., Ch.* 1, provides:

"The officer who has charge of the stock ledger of a corporation shall prepare and make, at least ten days before every election of directors, a complete list of the stockholders entitled to vote at said election, arranged in alphabetical order. Such list shall be open at the place where said election is to be held for 10 days, to the examination of any stockholder, and shall be produced and kept at the time and place of election during the whole time thereof, and subject to the inspection of any stockholder who may be present. Upon the wilful neglect or refusal of the said directors to produce such a list at any election they shall be ineligible to any office at such election."

This statute derives from Section 22 of the *General Corporation Law* of 1883, 17 *Del.L., Ch.* 147, which provided:

"After the first election of directors no stock shall be voted on at any election which shall have been transferred on the books of the company within twenty days next preceding such election; and it shall be the duty of the officer who shall have charge of the transfer books to prepare and make, at least ten days before every election, a complete list of the stockholders entitled to vote, arranged in alphabetical order. Such list shall be open to the examination of any stockholder, and shall be produced and kept at the time and place of election during the whole time thereof, and subject to the inspection of any stockholder who may be present. Upon the neglect or refusal of said directors to produce such list at any election they shall be ineligible to any office at such election.

"The stock ledgers, or, if there be none, then the transfer books of the company, shall be the only evidence as to who are the stockholders entitled to examine such list or the books of the company, or to vote, in person or by proxy, at any election."

In 1899, the *General Corporation Law* was rewritten. 21 *Del.L.* Ch. 273. Section 22 of the 1883 law was included in Section 17 of the 1899 law, and there was added to it the following sentence:

"The original or duplicate books of any corporation organized under this Act, in which the transfers of stock shall be registered, and the original or duplicate books containing the names and addresses of the stockholders, and the number of shares held by them, respectively, shall, at all times, during the usual hours for business, be open to the examination of every stockholder at its principal office or place of business in this State, and said original or duplicate books shall be evidenced in all courts of this State."

By subsequent amendments and rearrangements of the sections of the *General Corporation Law,* including the *Code of* 1953, the "dead stock" provisions of Section 22 of the 1883 act have become part of Section 212 of the Code; the voting list provisions are in Section 219; and the sentence added in 1899, conferring the right to inspect the stock ledger, has become Section 220 of the Code. But it is of interest to note that the voting list provisions were originally part of the same sentence as the provisions disenfranchising shares transferred within twenty days prior to election.

The question before us, as above stated, is a simple one. Is a voting list of stockholders "complete" if it does not disclose addresses and numbers of shares held?

Defendants insist that the statute is clear and unambiguous. By its terms, they say, nothing but a list of names is required, and there is no room for construction. If the legislature had meant stockholders plus addresses plus holdings, they argue, it could easily have said so, as indeed it did in the sentence added in the 1899 act (now Section 220) relating to the stock ledger. In effect, defendants say that a literal

interpretation of the language precludes any inquiry into the underlying meaning and purpose of the statute.

This contention the Vice Chancellor accepted. It is the foundation of defendants' case.

We have some doubt whether the statute is wholly free from ambiguity. What is the import of the word "complete" in its context? But let us assume that the language is on its face unambiguous, and see where that assumption leads us.

That clear and unambiguous language in a statute is ordinarily the conclusive evidence of legislative intent is an elementary rule. But, like all rules of statutory construction, it has its limitations. Literal reading of language leading to results quite inconsistent with the general intent of a statute is to be avoided.

> "Courts are not compelled to follow the letter of a statute when it departs from the true intent and purpose and to conclusions inconsistent with the general purpose of the act. * * * [A]nd they are obliged to give to the language of a statute a plain and sensible meaning having in mind its purpose and intent." *Darling Apt. Co. v. Springer*, 25 *Del.Ch.* 420, 424, 431, 22 *A.2d* 397, 402, 137 *A.L.R.* 803.

Again:

> "Unjust, absurd and mischievous consequences flowing from a literal interpretation of language may create an ambiguity calling for construction." *Nigro v. Flinn*, 8 *W.W.Harr.* 368, 38 *Del.* 368, 377, 192 *A.* 685, 688.

This is a rule that is cautiously applied; but there are occasions when it is applicable.

Let us examine the consequence of the literal interpretation of the statute that the defendant would have us approve.

The list is a voting list, compiled as of a specific date for a specific occasion—the annual election of directors. It is not the same thing as the stock ledger, which is a continuing record of stockholdings, re-

flecting entries drawn from the transfer books, and including (in modern times) non-voting as well as voting stock. The term "stock ledger" is often used in a broad sense to include the register or file of stockholders and the transfer books. *Cf.* the last paragraph of Section 17 of the act of 1899, above quoted.

But the voting list is compiled from the stock ledger. As originally drawn the statute, after disenfranchising stock transferred on the books within twenty days before the election, proceeds to direct "the officer who shall have charge of the transfer books" to prepare and make the list. The conjunction of the two ideas, embodied in one sentence, suggests the inference that, as regards those stockholders entitled to vote, the list should reflect the same information that appears in the ledger and the transfer books to the extent that such information is pertinent to the purpose that the list is designed to serve. This inference is strengthened by the circumstance that in 1899 when the *General Corporation Law* was completely revised, the provision expressly conferring the right of inspection of the stock ledger was added to the former Section 22, immediately following the voting list provision. It specifically contemplates that the books will show addresses and stockholdings as well as names.

This brings us to the inquiry: What is the purpose of the voting list?

Since the statute requires it to be "open * * * to the examination of any stockholder", it is clear that the list is designed to give him information, and this must mean information that he may intelligently make use of at the election. Only a moment's reflection is needed to see that a mere list of names cannot supply the attending stockholders with any information that can be effectively used in connection with the voting at the meeting. Of course in the majority of cases, in which there is no contest of any kind, stockholders seldom need the list at all; it is consulted only by the officers or by the inspectors of election. But in the case of a contest with the management, information respecting stockholdings and addresses is of great importance. From a bare list of names no checking of the proxies or of the vote is possible nor could a stockholder effectively use the list

in communicating with his fellow stockholders to solicit their support in the voting. The last point is of real importance. Until the polls are closed a stockholder may change his vote, and one stockholder has the right to attempt to persuade another to do so. For that purpose he is entitled to know whether the other owns one share or one thousand shares, and to know his address. If the management may proffer to the stockholders at an election of directors a bare list of names and refuse to disclose stockholdings and addresses, the opposing group is placed at a serious disadvantage. Such an unfair result is wholly inconsistent with the purpose of the statute to require management to afford to stockholders useful information.

Defendants suggest that because the *General Corporation Law* was designed to encourage the use of the corporate form of business enterprise the voting list provision was intentionally drawn to give the management an advantage. If that was the intent, why require any list whatever?

A secondary purpose of the statute is to provide a convenient tool for the use of the officers or of the inspectors of election in ascertaining the presence of a quorum and in computing the vote upon all matters submitted to the meeting for decision. It will not do to say that the stock ledger is the final authority as to who is entitled to vote. So it is, but this fact does not touch the point. The statute does not even require it to be kept at the place of election as such. No doubt it should be readily available, in case of challenge to the voting list, but the clear inference from the statute is that the information requisite for the conduct of the meeting will be contained in the voting list. Moreover, to require inspectors of election to check proxies and ballots from the stock ledger is to compel them to perform the often tedious task of examining the record of stockholdings for each stockholder and selecting from all of the entries reflecting the changes of his holdings the one appropriate to the record date—in other words, to do the very thing that in the interest of the prompt and efficient conduct of the meeting should be done before the meeting assembles—the thing that, in our opinion, the statute intends to require. The undesirability—indeed, the impracticability—of such a procedure is pointedly illustrated in this case. At the meeting under review the

inspectors actually had in their possession a voting list—a "complete" list, in the sensible meaning of that adjective in its context—which they used for the purpose of reference and computation. But the attending stockholders had a list of names only. We do not think that the statute contemplates any such extraordinary procedure.

Defendants say that we cannot attribute the needs of corporate meetings of modern times to the meetings of earlier times—that we cannot translate them to 1883. Presumably they mean that the rise of large corporations has created a need for the voting list that did not then exist. This is not so. Both the law of 1883 and the law of 1899 were obviously designed to facilitate the use and development of the corporate form of organization. They contemplated growth. The principles that they embody and the needs that they recognize apply equally to large and small corporations though perhaps in different degrees. Election disputes are not a modern innovation. The case of *Downing v. Potts*, 23 *N.J.L.* 66, cited on the briefs, was decided in 1851.

We think this argument beside the point.

We turn to the question of the practical construction of the statute. We are strongly inclined to believe that the procedure of disclosing in the voting list stockholdings and addresses has been followed in the great majority of corporate elections held under Delaware law during many years past. The Chancellor found, on sufficient evidence, that it has been the practice for some years to supply a list with stockholdings and addresses. It is true, as defendants say, that the evidence fails to meet the test of a "contemporaneous practical construction" of the statute that is required for the finding that the plaintiff urges—that practical construction in this case is well-nigh controlling. Accordingly, we do not rest our holding upon that ground. But the existence of the practice, to any substantial extent, suggests the correctness of our view that a meeting cannot be efficiently conducted with a bare list of names before it.

Defendants deny that a general practice has existed. They submitted an affidavit and a letter from representatives of two of the "corporation companies", indicating that on some occasions a bare

list of names has been furnished. This hardly contradicts the assertion of a general practice. And even if we assumed that two constructions of the statute were reasonably possible, we would still be faced with the necessity of choosing between them.

Another circumstance is of some significance.

The record does indicate that a general practice of including stockholdings and addresses in the voting list reaches back a considerable number of years, and we think in all likelihood probably as far back as the time when Section 17 was amended to permit the corporation to fix a record date more than twenty days before the election. See 35 *Del.L.* p. 231, enacted in 1927 (forty days); and 38 *Del.L.* p. 380, enacted in 1933 (fifty days). It cannot be doubted, we think, that these amendments were occasioned by the heavy labor of compiling a voting list for a corporation with a large number of stockholders. Before the recent introduction of modern business machines that labor had, of course, to be manually performed. The transcription from the stock ledger of a mere list of names would be one task; the addition of number of shares held and addresses would be a heavier task. From the adoption of the amendments of 1927 and 1933, is it not a probable inference that the legislature—or more realistically, the bar committee that drafted the amendments— assumed that the heavier task was required by statute as it then existed? Since the committees of the General Assembly seldom submit reports showing the background of legislation, no definite conclusion can be bottomed upon this circumstance; but, again, it is suggestive.

The reasoning of the last point discussed rests to some extent upon inference or probability. But there is one final consideration that seems to us to be clear and decisive. If the statute was not intended to serve the purpose that we have outlined, what purpose was it designed to serve? What intelligent use can be made of a bare list of names at a stockholders' meeting? We have been unable to think of any, and able counsel have not succeeded in supplying one. Indeed, the main thrust of defendants' brief is directed to their contention that the statute is so clear as to preclude the court from any inquiry as to its underlying intent and purpose. It is suggested that the list enables

a stockholder attending a meeting to know whether the corporation has recognized him as a stockholder entitled to vote. Of course, he knows already that he is a stockholder and that he has certain voting rights. He needs no list to tell him that. And what of the stockholder who has bought additional stock on the eve of the twenty-day period or the record date, and who wishes to know whether the transfer was completed in time to permit him to vote them? Apart from that situation, which merely illustrates the inadequacy of the defendants' attempt to give meaning to their construction of the statute, we regard it as highly unreasonable to say that the legislature directed the compilation of a voting list for so trivial a purpose as is suggested.

In answer to the contention that their construction of the statute leads to mischievous results, defendants reply that the contrary construction leads to evils of a different character. To disclose to stockholders stockholdings and addresses of other stockholders in a voting list, they say, "is to circumvent the corporation's defenses to a mandamus", *i.e.*, to a suit to compel inspection of the stockbooks. This means, they argue, that a stockholder seeking an inspection of the stock ledger for an improper purpose can obtain from the voting list information that would be barred to him in a mandamus suit, in which he would have to allege and prove a proper motive for inspection. The jobber in lists, the "raider", and others of that ilk, defendants argue, will be able to use the voting list for purposes inimical to the corporate interests.

There are two errors in this argument, and also, we think, a wholly unjustified fear of evil results. First, the argument appears to assume that the voting list, if containing stockholdings and addresses, would contain the same information as the stock ledger. This is not correct, for the reasons we have already stated. We noted the distinction in *Nodana Petroleum Co. v. State,* 11 *Terry* 76, 123 *A.2d* 243. Second, the assumption is made that the *Nodana* case holds that in an action to compel inspection of the stock ledger plaintiff must affirmatively allege and prove proper motive. The *Nodana* case does not so hold. That case concerned mandamus to inspect the corporate books generally. Third—and this goes to the basis of the whole argument—we see no reason to believe that the filing of a

voting list with stockholdings and addresses entails any such evils as defendants suppose. Regardless of whether there has been a general practice to disclose stockholdings and addresses, we can be sure from the evidence submitted that in a large number of meetings, over many years, such information has been given. There is no evidence that any evil results have occurred. Defendants' argument is based on supposition. Certainly it is possible that some stockholder might abuse a right conferred upon him, but that is no sufficient reason to deny the great majority of stockholders the benefits that we think the statute intended to confer upon them.

Defendants build a second argument upon the history of the statute. It runs as follows:

The *General Corporation Law* of 1883 was modeled upon the New Jersey Corporation Act of 1875, *R.S.*1874 Appendix, and the revision of 1899 was modeled upon the New Jersey Corporation Acts of 1896 and 1898, *P.L.*1896, *p.* 277 and *P.L.*1898, *pp.* 407, 410. The 1875 New Jersey Act contained a requirement for the preparation and filing of a voting list of stockholders, for use at the election. This act included a specific requirement that the list contain "the number of shares held by each" stockholder. A like provision is found in the New Jersey Act of 1896. The comparable section of the 1898 New Jersey Act specifically required the list to show "the residence of each, and the number of shares held by each" stockholder. *N.J.S.A.* 14:10-5. When the respective Delaware Acts were drawn, the specifications of the contents of the list were omitted. These omissions, in following the New Jersey Acts, must have been intentional, and must mean, it is argued, that the draftsman intended to require a list of names only. In similar cases, it is said, our courts in construing the *General Corporation Law* of this State, have drawn the conclusion that the departure from the text of the New Jersey Act evidenced a change of intent.

This argument is a plausible one, but its plausibility disappears upon analysis.

That the revision of our *General Corporation Law* of 1899 was modeled upon the then existing New Jersey corporation law has been

judicially recognized. See *Chicago Corporation v. Munds*, 20 *Del.Ch.* 142, 147, 172 *A.* 452, and cases cited. The *Munds* case dealt with the New Jersey Act of 1896. That the 1883 act was modeled upon the New Jersey Act of 1875 has not been so recognized, so far as we know. Some excerpts from the act of 1875 appear in defendants' brief and tend to support the inference that at least to some extent the New Jersey Act of 1875 was used as model. For instance, the first section of the New Jersey Act is followed almost verbatim. And other provisions seem to have been taken over. But when we come to sections of the two acts dealing with the voting list, we find significant differences in many respects—not merely in the language referring to the voting list.

The New Jersey Act of 1875 contained two sections referring to the voting list, Sections 36 and 41.

Section 36 provides in substance:

(1) That the transfer books "containing the names of the stockholders" shall be open to examination by a stockholder for thirty days previous to any election of directors;

(2) For the compilation and filing of a voting list "of all the stockholders * * * entitled to vote * * *, with the number of shares held by each", arranged in alphabetical order and open to examination, and for a penalty of two hundred dollars for failure to exhibit or submit such books or list;

(3) That the books shall be the only evidence of stockholders who are entitled to examine the list or the books and to vote;

(4) That the persons receiving the greatest number of votes shall be directors.

Section 41 provides in substance:

That the board of directors shall be required to produce at the time and place of election a complete list of all the stockholders entitled to vote "with the number of shares held by each", arranged in alphabetical order and subject to the inspection of any stockholder;

and upon failure of the directors to produce the list they shall be ineligible for office at such election.

Section 22 of the Delaware Law of 1883 is quoted above. It provides in substance:

(1) For a provision disenfranchising stock transferred within twenty days before the election;

(2) For the officer in charge of the transfer books to make "a complete list of the stockholders entitled to vote, arranged in alphabetical order", to be kept at the election and open to the examination of any stockholder; and for ineligibility for office of directors upon failure to provide the list;

(3) That the stock ledgers or transfer sheets shall be the only evidence of stockholders entitled to examine the list or the books, or to vote.

It is obvious that the draftsman of the Delaware section departed from the New Jersey statute both in arrangement and content, and in many places used different language. He rejected certain portions of the New Jersey sections entirely. But the nature of the changes suggest also that his intent was to condense and express in more concise language some of the ideas that (we assume) he borrowed from the New Jersey Act. When he came to the requirement for a voting list he adopted the idea but rewrote it in shorter form. He eliminated the language "with the number of shares held by each". Why? Two explanations are possible. He may have intended a bare list of names only. This, of course, is the defendants' contention. Or he may have seen at once that the description of the list was carelessly drawn, and specified only numbers of shares held but failed to specify addresses; and that under the well-known rule of *expressio unius,* addresses would be excluded. (This defect was remedied by the New Jersey Act of 1898.) And he may well have assumed that the phrase "complete list" would of itself signify a list containing stock holdings and addresses, because such information was essential to the purpose the list was designed to serve. This possible inference is strengthened by the decision of the draftsman to insert the voting list provision

as an appendage to the "dead stock" provision, suggesting, as before noted, that a list prepared from the transfer books would naturally reflect the number of shares held on the day of the "deadline".

The considerations that lead us to accept the second inference as the more reasonable one are those we have already outlined in dealing with the fundamental question of the purpose of the statute. The acceptance of the first inference leads to very unreasonable and mischievous results; it renders the list practically valueless.

As to Section 17 of the Delaware Act of 1899, it is clear that so far as concerns the provisions for the voting list it was in substance a mere re-adoption of Section 22 of the Act of 1883. The New Jersey Act of 1898 was, as to this section, not followed.

The argument based on the history of the statute is therefore unacceptable. The Vice Chancellor accepted it, but we are compelled to disagree.

The Delaware cases dealing with the point of changes in our corporation law from the New Jersey prototype are readily distinguishable. In *Chicago Corporation v. Munds, supra,* a New Jersey statute providing for appraisal of dissenters' shares upon a merger, *Sec.* 108 of the General Corporation Act of New Jersey of 1896, *N.J.S.A.* 14:12-6, provided for the payment to the dissenter of "the full market value of his stock". The comparable section of the Delaware law provided only for payment of "the value of his stock". 8 *Del.C.* § 262. The Chancellor held that the change raised a strong inference that a different measure of value was intended; but he did not rest his holding on this ground alone. Considering the purpose to be achieved by the statute, he held that, apart from the legislative history, the result would be the same—market value was not the only standard of value. Such a result was reached because reasonable and consonant with the underlying purpose of the statute. The contrary is the result here if defendants' contention be accepted. This is the important difference between the *Munds* case and the case at bar.

In *Martin v. American Potash & Chemical Corporation,* 33 *Del.Ch.* 234, 92 *A.2d* 295, 35 *A.L.R.2d* 1140, the Delaware Act of 1927, 35 *Del.Laws c.* 85, § 12, 8 *Del.C.* § 244, respecting decrease of capital stock followed the New Jersey Act of 1926, *N.J.S.A.* 14:11-5, but in specifying the sources from which shares could be purchased added the phrase "at private sale". Plaintiff's construction of the statute in that case would have rendered this language meaningless. Hence it was rejected. The decision is not in point here, except for the general principle that a statute should not be construed to render it meaningless.

■ Defendants' case comes to this: first, that the statute admits of no interpretation; and second, that if interpretation be allowed, its legislative history supports defendants' construction. For the reasons above given, both arguments are rejected. We hold that the voting list required by Section 219 must, to be complete, set forth the number of shares held by each stockholder, and his address as shown by the books of the corporation.

There remains for consideration the question of relief. Plaintiff suggests various alternatives, but neither party has argued the question. The matter is important and should be briefed and decided. If counsel can agree on a method of procedure, *i.e.,* whether the point should be orally argued or submitted on briefs, and upon a schedule of filing or exchanging briefs, a stipulation should be submitted. Otherwise, the Court will enter an appropriate order.