**In the Matter of The ESTATE OF Irene NELSON, Deceased.**

Court of Chancery of Delaware,
New Castle County.

Submitted Jan. 18, 1982.

Decided March 24, 1982.

---

James T. McKinstry, and Helen L. Winslow, of Richards, Layton & Finger, Wilmington, for petitioner.

Walter L. Pepperman, II, and Francis J. Murphy, of Morris, Nichols, Arsht & Tunnell, Wilmington, for respondents Dr. Russell Emory, Louise Emory, and Dr. Robert Nelson Emory.

BROWN, Vice Chancellor.

This is a will contest proceeding, having been commenced by a petition to review the will of the decedent pursuant to the authority of 12 *Del.C.* § 1309. The respondent executor has moved for summary judgment, contending on the undisputed facts of record that the petition for review was not timely filed. The key to the matter involves a question of first impression under our law, namely, how is a self-proved will admitted to probate?

Prior to the 1974 revision to the Delaware probate laws, 59 *Del.L.* Ch. 384, such a thing as a self-proved will was unknown in this jurisdiction. Under the former practice the proof of a will required the attesting witnesses to appear before the Register of Wills in the county in which the will was offered for probate. The Register of Wills then satisfied himself that the will was executed in the presence of the attesting witnesses, that they signed the document in the presence of the testator, that the testator was of sound mind and signed of his own free will, etc. If an attesting witness was dead or unavailable, his or her signature had to be established by other means. Only then was the will admitted to probate and letters testamentary for the administration of the estate issued to the named executor.

Under the 1974 amendments a new statute was added which now provides that an attested will may at the time of its execution, or at any subsequent date, be made self-proved by the acknowledgement thereof by the testator and the affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of Delaware, and evidenced by the officer's certificate, under official seal, attached or annexed to the will. A sample form to accomplish this is set forth in the statute. 12 *Del.C.* § 1305. In addition, another new statute, 12 *Del.C.* § 1310, was added to read as follows:

"If the will is self-proved, compliance with signature requirements for execution is conclusively presumed and other requirements of execution are presumed subject to rebuttal without the testimony of any witness upon filing the will and the acknowledgment and affidavits annexed or attached thereto, and, unless there is proof of fraud or forgery affecting the acknowledgment or affidavit, the will shall be admitted to probate subject to all other provisions of this title."

In other words, as to a will made self-proving in compliance with § 1305, it is no longer necessary for the attesting witnesses to appear in person before the Register of Wills in order to verify their role in the creation of the testamentary instrument. Against this backdrop we have the following factual situation.

Irene Nelson died on June 24, 1979. Some months before, Randy J. Holland, Esquire, of Georgetown, had prepared a last will and testament for her. At the time of Irene Nelson's death her executed will was in the custody of Mr. Holland at his law office. As executed, the will was self-proving.

On June 25, 1979 Holland took the will to the Office of the Register of Wills for Sussex County in Georgetown. He gave the will to the Chief Deputy in Charge of the office, and in return he was given a receipt bearing the same date. In so doing, Holland fulfilled the duty imposed upon him by 12 *Del.C.* § 1301, which requires a person

having custody of a will to "deliver" it to the Register of Wills within 10 days from the time he receives information of the death of the testator.

On this same date, June 26, 1979, Holland sent a letter addressed to the executor named in the will—the executor being a resident of New Castle County—notifying him that the will had been "deposited" with the Office of the Register of Wills for Sussex County and informing the executor that it would be necessary for him to appear personally before the Register of Wills for that County in order to commence administration of the estate. Holland was aware that the named executor would probably be represented by counsel other than himself in the handling of the estate.

When the will of Irene Nelson was received by the Chief Deputy Register of Wills, it was placed in an undated envelope which, in turn, was placed in a file cabinet. It was not recorded or indexed in any way and at the time no separate file was made up concerning the estate of Irene Nelson. The practical and obvious explanation for this is that no one had then appeared to pay the necessary filing and recording fees required to open the estate for administration.

On July 12, 1979, more than two weeks later, the executor and his Wilmington attorney went to the Sussex County Register of Wills, completed the necessary paperwork, paid the initial fees, gave bond, and were granted letters testamentary to administer the estate.

The petitioner in this matter is Mary Humphrey of Cedar Rapids, Iowa, a niece of the decedent. By July 20, 1979 she had looked into the situation and had retained Delaware counsel for the purpose of contesting the will. It seems fair to say from the uncontested facts that the petitioner was on notice by that date, through copies of correspondence sent to counsel and the like, that the will had been given to the Register of Wills on June 26 even though the estate was not opened in the Register's Office until July 12.

Nonetheless, over the next several months counsel for the petitioner, their offices being in Wilmington, called the Sussex County Register of Wills Office on at least three occasions, the purpose being to be sure of the date of delivery of the will to the Register's Office. This was important because, as will be seen hereafter, 12 *Del.C.* § 1309, in express language, requires that a petition to review a self-proved will must be brought within six months after "delivery" of the will to the Register of Wills. On each occasion, however, counsel for petitioner was informed that the date was July 12, 1979, the date on which letters testamentary had been granted, and not June 26, 1979, the date on which Holland had physically delivered the will to the Register's office. This was due to the fact that July 12, 1979 was the only date reflected on the records of the Register. There was nothing of record in the Register's Office, not even a copy of the receipt given to Holland, which revealed the actual June 26 delivery date.

On January 10, 1980 petitioner filed her petition for review, thus commencing this action. Her petition recites that July 12, 1979 was the date on which the will of Irene Nelson was "filed" with the Register of Wills. Technically, this would appear to be correct since the will was not filed, recorded and indexed until that date. At the same time, the fact critical to the present controversy is that even though the petition for review was filed within six months of the July 12 filing and recording date, it was not filed within six months of the June 26 date on which the will was physically placed in the custody of the Register's Office by Holland.

Because of this circumstance, the motion for summary judgment has been brought on behalf of the respondent executor on the grounds that the petition for review is time-barred under the language of the very statute on which the petitioner relies for her right to seek a review. This represents the decision on that motion.

Initially, it should be noted that a petition for review of a will under 12 *Del.C.*

§ 1309 differs from a caveat to a will as authorized by 12 *Del.C.* § 1308. While the grounds relied upon for nullifying the will may be the same in either case, the difference lies in the fact that the purpose of a caveat proceeding is to prevent a will from being admitted to probate, while a petition for review is addressed to a will which has already been admitted to probate. The purpose of the latter proceeding is to determine whether the probated will should be permitted to stand or whether it should be set aside because of some irregularity. This distinction is made clear by the opening sentence of § 1308(a)—"A caveat against the allowance of an instrument as a will shall be received by the Court of Chancery at any time before its proof;"—when contrasted with the last sentence of § 1309(a) —"Upon such review there shall be the same proceedings as upon a caveat, and the allowance of the will and granting of letters may be affirmed or the will rejected and the letters revoked."

Turning then to the statutory language on which the respondent relies in seeking the entry of summary judgment, the opening provisions of § 1309(a) read as follows:

"Any person interested who shall not voluntarily appear at the time of taking the proof of a will, or be served with citation or notice as provided in § 1303 of this title, shall, at any time within 6 months after such proof *or after delivery to the Register of Wills of self-proved will,* have a right of review which shall on his petition be ordered by the Court of Chancery; . . . ." (Emphasis added.)

The immediate thing to be noticed from this is that the language of § 1309, read literally, establishes the potential for two different time periods for challenging a will under the review procedure, the difference being made dependent on the form of the will. This case illustrates the point. Read literally, the six-month time period begins to run on a self-proved will from the date it is delivered to the Register of Wills, without more. As to the traditional, nonself-proving will however, the time does not start to run with the date of delivery, but rather it commences to run as of the date the will is proved before the Register and is admitted to probate. Thus, delivery supposedly triggers the running of the statutory time period in the one case while formal proof of the will starts it running in the other. These two events are not necessarily the same. As a practical matter, a traditional, nonself-proving will is often "delivered" to the custody of the Register of Wills in advance of the time that the attesting witnesses ultimately appear before the Register for the purpose of proving the will and causing it to be admitted to probate.

As best I can tell, this circumstance has been brought about by the fact that during the 1974 overall revision of the probate laws the General Assembly, as part of the process of creating and authorizing the new, self-proved type of will, simply engrafted the previously emphasized language—"or after delivery to the Register of Wills of self proved will"—upon the then existing language of the review statute. (Compare 59 *Del.L.* Ch. 384 against the former 12 *Del.C.* § 1310, the predecessor to the present § 1309, as it appeared in the 1953 Delaware Code.) In so doing, it would appear that someone overlooked the potential for the problem that has been brought to light by the present controversy.

Petitioner relies on the argument that the various provisions of 12 *Del.C.*, Chapter 13 must be read as a whole so as to harmonize them with each other. Despite the literal language of § 1309 she argues that it would be arbitrary and harsh to construe it so as to permit the statutory limitation period to commence to run at different times depending on the type of will involved, especially since there is neither an evident statutory policy nor any basis in reason for such disparate treatment of testamentary instruments. She points to the harshness that such a literal interpretation would impose in the present situation since it would mean that her petition would be barred based upon the running of the statute from a date which nowhere appeared of record in the Register of Will's office.

Petitioner suggests that reason and fairness require that § 1309 be construed so as to require a petition for review of a self-proved will to be commenced within six months of the date that the will is "filed" and recorded by the Register for the purpose of opening an estate and issuing letters testamentary thereon. In essence, she urges that the words "delivery to" as used in § 1309(a) should be interpreted to mean "filing by" or "filing and recording by" the Register of Wills. She argues that this would assure equality of treatment as to both types of wills and, in the case of a self-proved will, cause the statute to run from the date of an official act of the Register of Wills rather than to be made dependent upon a case-by-case factual determination as to an act of physical delivery and receipt by the Register.

The respondent on the other hand, as might reasonably be expected, relies upon the literal meaning of the statutory language. He points out that 12 *Del.C.* § 1301 provides that "[a]ny person, having custody or possession of any instrument of writing purporting to be a last will and testament and intended to take effect upon the death of the testator therein named, shall produce and *deliver* the same to the Register of Wills" within the specified period of time. Since § 1309(a) thereafter provides that the six month review period in the case of a self-proved will begins to run upon "delivery" to the Register of Wills, respondent takes the position that the General Assembly has deliberately used the same term in both statutes, and thus it must be considered to have meant and intended that which it said. In other words, respondent argues that there is no ambiguity between the two sections, and thus no room for the construction which the petitioner advocates.

While I can agree with respondent as far as his argument goes, I find that an ambiguity does exist if one gives § 1309 the literal reading urged by respondent when measured against other provisions in Chapter 13. And this gets us back to the question posed at the outset, namely, how is a self-proved will admitted to probate? Or, to be more specific, does the mere act of delivery of a self-proved will to the Register of Wills amount to admitting it to probate? For this is what the respondent's argument boils down to, as he freely admits. He says that it does.

To focus on why this determination is critical, one need only go back to the purpose of the § 1309 review procedure. It is a procedure whereby a contestant seeks to have set aside a will which has already been admitted to probate. As noted, the last sentence in § 1309(a), quoted previously, makes this clear. Thus, for the six-month limitation to begin to run on the right of one to seek a review under § 1309, the will must already be admitted to probate. Otherwise, the remedy would have to be by caveat pursuant to § 1308. Thus, if the act of delivery of the self-proved will starts the time period to run, then the act of delivery must itself amount to admitting the will to probate, since delivery by the custodian of the will to the Register requires no act of the Register. (Physical receipt by the Register is no more than the completion of delivery, the act required by law of the custodian of the will.) Indeed, this is the position of the respondent, as illustrated by his contention that because of this circumstance there can never be a caveat to a self-proved will.

But despite the superficial logic of this position, I find that I cannot accept it. The reason that I find it unpersuasive is that it necessarily assumes that proof as to the attesting witnesses is the only thing required in order to have a will admitted to probate, and that when this feature is taken care of under the self-proving provision of § 1305, there is no discretion left in the Register of Wills to reject it. Reference to other portions of Chapter 13 indicates that this cannot be.

For one thing, § 1302(a) requires that "[a] will shall be proved before the Register of Wills of the county in which the testator was domiciled at the time of his death." Thus, if a will is to be validly probated the Register must necessarily be satisfied that the decedent was domiciled in the county in

which the Register holds office. Is that jurisdictional requirement to be determined by the person who brings a self-proved will to the Register's office rather than by the Register? Did Mr. Holland make that decision in this case? Does the Register have no duty or say as to whether the will is properly before his office in the case of a self-proved will? I cannot think this to be so. However, under respondent's argument, a self-proved will would be admitted to probate upon delivery to the Register even if delivery was made in the wrong county. Thus, under that argument, such wrongful delivery would start the time period running for review even though the will had been improperly admitted to probate.

More importantly, § 1302(b) reads as follows:

> "*To be effective* to prove a transfer of any property or to nominate an executor, a will *must be declared to be valid by admission to probate.*" (Emphasis added.)

Who but the Register of Wills has the power to declare a will to be valid by his act of admitting it to probate? Thus, does the statutory scheme not contemplate some act by the Register of Wills as to all testamentary instruments, be they self-proving or otherwise? But under the literal argument of the respondent the required declaration of validity and admission to probate in the case of a self-proved will could be accomplished by whoever the person might be who "delivered" the will to the Register's office. If that was so, the legal act of declaring a self-proved will to be valid so as to transfer property interests could be accomplished by the attorney who drew the will, or by his secretary for that matter. To carry the illogical premise further, this solemn and legal act could be performed by a six-year old child, or even an insane person provided he was able to walk and carry a piece of paper.

Thirdly, under the respondent's literal argument, would it not be possible for a self-proved will to be admitted to probate before the Register of Wills could even be satisfied that the testator was dead? As a practical matter, the Register of Wills traditionally requires proof of death before issuing letters testamentary. In the case of the traditional, nonself-proving will, such proof is normally required by the Register as part of the procedure of admitting the will to probate. In fact, it would seem to be a rather basic component of the probate procedure. But under the respondent's approach, if the Register of Wills plays no part in admitting a self-proved will to probate, the fact that a testator was not dead would become merely a basis for setting aside the will under review proceedings, provided, presumably, that the testator's continued well-being was brought to light within six months of the delivery of the self-proved will.

Finally, 12 *Del.C.* § 1310, the new section previously quoted at the outset hereof which deals expressly with self-proved wills, provides that compliance with execution and signature requirements is "conclusively presumed" (an interesting choice of words in itself) and, that "unless there is proof of fraud or forgery affecting the acknowledgment or affidavit, the will shall be admitted to probate." Does this not state in clear language that a self-proved will can be challenged on the basis of fraud in the execution or forgery of the attesting affidavits *before* it is admitted to probate? And if this is so, does it not mean that the Register is empowered to refuse to admit a self-proved will to probate where there is convincing proof of fraud or forgery? And, as a result, does the statute not contemplate that some act by the Register of Wills is required before a self-proved will can be admitted to probate? And does this not negate any thought that a self-proved will can be probated, and this discretion given to the Register circumvented, by its mere delivery to the Register by the person having custody of it. The answers to these questions would appear obvious.

In this regard, I note also that § 1310 makes its presumptions as to signature and execution requirements effective "upon filing" of the self-proved will rather then

**444**

upon "delivery" to the Register. Even the respondent argues that these two terms are not synonymous.

■ The sum and substance of the foregoing comparisons, I think it fair to say, is that § 1309, when considered in light of the other provisions of Chapter 13, has built-in irreconcilable conflict. If the act of delivery itself cannot equate to the probate of a self-proved will, then logically the six-month limitation on filing a petition for review cannot commence to run on the date of delivery in view of the fact that the right of review given by § 1309 necessarily presumes the existence of a probated will. Stated another way, if a party cannot seek review of a will under § 1309 until such time as it has been admitted to probate, it would make no sense at all to measure the time period during which he has a right to seek such relief from the date of an act which necessarily precedes but which does not amount to the admission of the will to probate.

In this regard it is a well accepted principle of our law that unjust, absurd and mischievous consequences flowing from a literal interpretation of statutory language may create an ambiguity calling for construction. *Magill v. North American Refractories Company*, Del.Supr., 128 A.2d 233 (1956); *Nigro v. Flinn*, Del.Super., 192 A. 685 (1937). The statement of the Supreme Court in *Knox v. Georgia-Pacific Plywood Company*, Del.Supr., 130 A.2d 347, 352 (1957) would seem to apply with equal force to the present situation:

"Appellee contends that the language of the statute is clear and that there is therefore no room for construction. It is true that if the pertinent sections are read separate and apart from each other and without due regard for the purpose of the statute as a whole the language of each section is not ambiguous. In some instances such an interpretation would eliminate an attempt at construction, but, as this court said in the case of *Magill v. North American Refractories Co.*, Del., 128 A.2d 233, this rule, like all rules of statutory construction, has its limitations.

If a literal interpretation leaves a result quite inconsistent with the general intent of the statute, such interpretation must give way to the general intent, even though the language of a specific section or clause would seem to be contrary thereto. *Magill v. North American Refractories*, supra; *Darling Apartment Co. v. Springer*, 25 Del.Ch. 420, 22 A.2d 397, 137 A.L.R. 803. This is particularly true where, as here, such literal interpretation would also lead to an unjust, absurd and mischievous consequence."

To illustrate the scope of mischief that might exist here if a literal reading of the separate sections of Chapter 13 were adhered to, one need only consider the possibility that if delivery of a self-proved will to the Register of Wills does not amount to the probate of the will—which surely it cannot—then one could deliver such a will to the Register, wait for the expiration of six months before taking out letters and opening the estate, and thereby cut off the right of a contestant to challenge the validity of the will under the review procedures once the estate is opened.

Thus, I find that § 1309, in the present form, is ambiguous with regard to its attempt to define the six-month limitation imposed on the right of a party to seek review of a self-proved will, and I reach this conclusion despite the literal language of the statute even when coupled with the use of the word "deliver" in § 1301.

■ Looking then to the intent of the General Assembly expressed in Chapter 13 as a whole, I take note that prior to the 1974 revision of the probate laws the time limitation on the right to seek review of a will commenced from the date of its proof, or, in other words, the date that it was admitted to probate. From the resulting content of Chapter 13, I find no legislative intention to change this with respect to the newly created self-proved will despite what would appear to be an unfortunate choice of language employed in § 1309 as a part of the 1974 revision. This is because the General Assembly left intact § 1302(b), which requires all wills to "be declared valid by

admission to probate" before they are effective to transfer any property interests, and because in adding § 1310 as a new section specifically dealing with self-proved wills the General Assembly, by necessary implication, empowered the Register to deny probate to a self-proved will upon proof of fraud or forgery in connection with the affidavits and acknowledgement required by § 1305 in order to make a will self-proving.

Viewed logically, I think that the obvious purpose of the General Assembly in creating the self-proved will was to provide a means for eliminating one aspect of the proof of a will that was theretofore required, namely, the personal appearance of the attesting witnesses before the Register of Wills so as to verify their signatures as witnesses and to attest to the fact that the testator executed the will in their presence while appearing to be of sound mind, free from duress, etc. This change offers the potential for expediting the probate process and avoids the problems and delay sometimes caused by the intervening death of attesting witnesses, the inability to locate an attesting witness, etc. I cannot conceive that it was meant also to express a legislative intention to reduce the historical function of the Register of Wills and to create a special type of will, admissible to probate by a different means and subject to different rights from testamentary instruments of the traditional variety, a premise which necessarily underlies the position being advocated by the respondent here. Compare the rationale in *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606 (1974).

Accordingly, on the undisputed facts of this matter, I find that the petitioner was not required to file her petition for review within six months of the June 26, 1979 date on which Holland delivered the will of Irene Nelson to the Sussex County Register of Wills. At the same time, although it makes no difference as to the outcome of the decision on the present motion for summary judgment, I cannot conclude, as petitioner suggests, that "delivery" as used in § 1309

should be construed to mean the date of "filing" or the date of "filing and recording" of a self-proved will with the Register. Again, this is because in my view there has been no legislative intent to deviate from the previously existing legislative purpose, namely, to commence the running of the limitation period from the date that a will is admitted to probate, regardless of when it is delivered, filed or recorded.

In practice, these two dates may often be the same. But the theory is different. It is the proof of the will, the circumstance of admitting it to probate by the Register, which transforms the potential remedy into one by a review proceeding rather than by a caveat. Thus, it must be this circumstance, the admission of the self-proved will to probate, which triggers the running of the § 1309 time limitation on the right to seek review, and not the ministerial act of filing and recording a self-proved will performed by someone in the Register's office. The distinction may be slight, but I think it to be theoretically significant.

In this regard I offer one final observation. Investigation reveals that it is the present practice of the Register of Wills in all three counties of the State to consider a self-proved will to be admitted to probate as of the date that it is delivered into the physical custody of the Register—and further, to apparently consider such a will to have been probated by the mere fact of delivery, just as the respondent has contended in this case. This practice has no doubt come about because of the absence of any judicial direction in the area prior to this case. Nonetheless, because of the reasons set forth herein, I feel that this is both unfortunate and wrong, and that the practice should be changed forthwith before additional controversies develop.

Administratively, the Court will take steps to rectify the procedure so as to require in each case some official indication of record by the Register of Wills as to the fact that a will, self-proving or otherwise, has been declared valid and admitted to

probate as required by the General Assembly, including the date on which it was done.* If others feel that some change should more properly be pursued through the General Assembly, they are naturally free to do so.

Returning to the facts of this case, the first date of record evidencing official recognition by the Register of Wills of Sussex County that the will of Irene Nelson was considered to be valid and admitted to probate was the date of July 12, 1979, the date on which letters testamentary were granted to the executor named in the will. The Register could not have issued letters testamentary on that date unless he was satisfied on that date that the will had been sufficiently proved.

---

* For the authority for this, see 12 *Del.C.* § 2501 which now provides that: "In performing the functions of his office, the Register of Wills of each county shall act only as a Clerk of the Court of Chancery."

 Therefore, on the facts of the matter, I conclude that Irene Nelson's will was admitted to probate on July 12, 1979, and that as a consequence, the petition for review having been filed within six months after that date, it is not barred by the six-month limitation period contained in 12 *Del.C.* § 1309. Accordingly, the motion of the respondent for summary judgment is denied. An appropriate form of order may be submitted.