**COASTAL BARGE CORPORATION,**
Appellant Below-Appellant,

v.

**COASTAL ZONE INDUSTRIAL CONTROL BOARD of the State of Delaware, Kent County Levy Court, and Delaware Saltwater Sportfishing Association, Appellees Below-Appellees.**

Supreme Court of Delaware.

Submitted: Jan. 29, 1985.

Decided: April 22, 1985.

David S. Swayze (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellant.

Nicholas H. Rodriguez of Schmittinger and Rodriguez, P.A., Dover, and N. Maxson Terry, Jr. of Terry, Jackson, Terry & Wright, Dover (argued), for appellees.

Before McNEILLY, HORSEY, MOORE and CHRISTIE, JJ., and HARTNETT, Vice-Chancellor.

McNEILLY, Justice:

This is an appeal from the Superior Court's affirmance of the Coastal Zone Industrial Control Board's ("Board") decision of May 7, 1984 prohibiting the Coastal Barge Corporation ("Coastal Barge") from engaging in a coal lightering operation in the lower Delaware Bay. The Superior Court and the Board concluded that Coastal Barge's proposed coal lightering operation was prohibited by the Coastal Zone Act. 7 *Del.C.* §§ 7001–7013. For the reasons hereinafter explained, we affirm.

I

This case turns primarily on the issue of statutory interpretation. The facts leading to this suit are undisputed; we recite them for a clearer understanding of the issues.

Coastal Barge has developed a plan to conduct a coal lightering operation in the lower Delaware Bay. Coastal Barge's vessels (barges) would load coal at east coast ports such as Norfolk, Newport News, Baltimore, and Philadelphia and then travel to the Delaware Bay. In the Delaware Bay, approximately five miles off the coast of Big Stone Beach, Coastal Barge's vessels would link up to large colliers ("super colliers"). The super colliers would be anchored on the Bay's floor for a period of twenty-four to forty-eight hours while the coal is transferred to them from the vessels. Then the super colliers, filled with coal from the vessels, would depart for

foreign destinations while the vessels would return to their next customer at a United States east coast port. Coastal Barge's reason for its selection of the Delaware Bay as the site for its operations is that, it alleges, the Delaware Bay is the only protected anchorage between Maine and Mexico deep enough to handle the fully loaded super colliers.

On February 22, 1984, Coastal Barge filed an application with the Department of Natural Resources and Environmental Control of the State of Delaware ("DNREC") for a status decision concerning the applicability of the Coastal Zone Act. In its application Coastal Barge acknowledged that its project might have negative environmental effects on air and water quality as well as having the potential to pollute the environment when there is an equipment malfunction or human error.

In acting upon Coastal Barge's application, the Secretary of the DNREC was required to determine whether the Coastal Zone Act, which absolutely prohibits "heavy industry uses" and "offshore gas, liquid, or solid bulk product transfer facilities" in the Delaware Coastal zone, 7 *Del.C.* § 7003, prohibited Coastal Barge's proposed coal lightering operation. The Secretary found that Coastal Barge's operation was not prohibited by the Coastal Zone Act since the operation did not fit within the statutory definition of a "bulk product transfer facility" provided in 7 *Del.C.* § 7002(f) since the coal transfers would be from vessel to vessel rather than "vessel to onshore facility or vice versa." Section 7002(f) defines "bulk product transfer facility" in the following pertinent terms:

> "Bulk product transfer facility" means any port or dock facility, whether an artificial island or attached to shore by any means, for the transfer of bulk quantities of any substance from vessel to onshore facility or vice versa."

7 *Del.C.* § 7002(f).

Appeals to the Board were filed from the Secretary's decision by Kent County Levy Court, Delaware Saltwater Sportfishing Association, Sussex County Council and the Delaware Wildlife Federation. The Board held a public hearing and then issued its opinion, reversing the Secretary, holding that Coastal Barge's proposed coal lightering operation constituted an offshore "bulk product transfer facility" prohibited under the Coastal Zone Act. The Board did not address the second requirement of the definition of "bulk product transfer facility" in 7 *Del.C.* § 7002(f) that the transfer of coal be "from vessel to onshore facility or vice versa".

Coastal Barge appealed the Board's decision to the Superior Court. For various reasons enumerated in its August 29, 1984 letter opinion, the Superior Court affirmed the Board.

Coastal Barge appeals to this Court for a determination of whether its proposed coal lightering operation constitutes a "bulk product transfer facility" prohibited by the Coastal Zone Act.

## II

██ As appellees conceded at oral argument, reversal of the Board is warranted if it abused its discretion, committed an error of law, or made findings of fact unsupported by substantial evidence. *Kreshtool v. Delmarva Power and Light Co.*, Del.Super., 310 A.2d 649, 652 (1973) (citing to *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

It is undisputed that "bulk product transfer facilities" are prohibited by the Coastal Zone Act. The sole issue here is whether Coastal Barge's operation involves a "bulk product transfer facility".

Coastal Barge argues that when statutory language is plain and unambiguous there is no room for construction and the statute must be given the exact meaning conveyed by the explicit language. It refers to the following language of this Court:

[T]his Court does not "sit as a super-legislature to eviscerate proper legislative enactments. If the policy or wisdom of a particular law is questioned as unreasonable or unjust, then only the elected representatives of the people may amend or repeal it. *Judges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will.*

*Delaware Solid Waste Authority v. The News-Journal Co.*, Del.Supr., 480 A.2d 628, 634 (1984) (quoting *Public Service Commission v. Wilmington Suburban Water Corporation*, Del.Supr., 467 A.2d 446, 451 (1983)). Coastal Barge argues that the definition of "bulk product transfer facility" in § 7002(f) is unambiguous and must be given its literal meaning. Given such literal meaning, Coastal Barge argues, its coal lightering operation is not a "bulk product transfer facility" since its operation (1) does not involve "any port or dock facility" and assuming *arguendo* that it did it (2) does not involve the transfer "of any substance from vessel to onshore facility or vice versa."

### A.

■ Coastal Barge's first argument is that its proposed operation does not involve any port facility since it does not involve a "port" nor "facility", nor would such port facility be an "artificial island" as required by § 7002(f). This argument is without merit. The words "port", "facility" and "island" are not defined in the Coastal Zone Act. Words used in a statute that are undefined should be given their ordinary, common meaning. *Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S.Ct. 2204, 2207, 65 L.Ed.2d 144 (1980), *Bailey v. State*, Del.Supr., 450 A.2d 400, 402 (1982). The common meanings of "port", "facility", and "island" lead us to the conclusion that Coastal Barge's operation will involve a port facility as required by § 7002(f).

As stated by the Board, the term "port" has been defined as a place of refuge in which protection and shelter are sought, *The Cuzco*, W.D.Wash., 225 Fed. 169, 176 (1915), and as a place intended for loading and unloading of goods, *The Baldhill*, 2nd Cir., 42 F.2d 123, 125 (1940). In addition, the dictionary definition of "port" is "a place where ships may ride secure from storms", *Webster's Third New International Dictionary* 1767 (1976). "Facility" is defined as "something that promotes the ease of any action, operation, transaction, or course of conduct" *Id.* at 812. Clearly, Coastal Barge's operation includes what is commonly defined as a port facility.

■ Moreover, Coastal Barge's argument that its port facility is not an artificial island and therefore not within the § 7002(f) prohibition is without merit. To ascertain the common meaning of "island" we again look to the dictionary which defines "island" as including "something resembling an island by its isolated, surrounded, or sequestered position." *Id.* at 1198. Surely the anchored super colliers resemble an island.

### B.

Coastal Barge's second and better argument is that its operation does not involve the transfer "of any substance from vessel to onshore facility or vice versa" as required by § 7002(f). Coastal Barge is correct, its operation does not involve a transfer of any substance from vessel to onshore facility or vice versa and such a transfer would seem to be literally required by § 7002(f). But we cannot read that language of § 7002(f) in isolation from the rest of the Coastal Zone Act.

■ A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce an harmonious whole. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975), *Mastro Plastics Corp. v. National Labor Rel. Bd.*, 350 U.S. 270, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956), *Murphy v.*

*Board of Pension Trustees*, Del.Supr., 442 A.2d 950, 951 (1982).

■ To apply a statute the fundamental rule is to ascertain and give effect to the intent of the legislature. 73 Am.Jur.2d *Statutes* § 146 (1974). If the statute as a whole is unambiguous, there is no reasonable doubt as to the meaning of the words used and the Court's role is then limited to an application of the literal meaning of the words. *See Delaware Solid Waste Authority v. The News-Journal Co., supra.* However, it is undisputed that when a statute is ambiguous and its meaning may not be clearly ascertained, the Court must rely upon its methods of statutory interpretation and construction to arrive at what the legislature meant. *Carper v. New Castle County Bd. of Ed.*, Del.Supr., 432 A.2d 1202, 1205 (1981).

■ If a statute is reasonably susceptible of different conclusions or interpretations, it is ambiguous. 2A Sutherland, Statutes and Statutory Construction § 45.-02 (4th ed. 1984). Ambiguity may also arise from the fact that giving a literal interpretation to words of the statute would lead to such unreasonable or absurd consequences as to compel a conviction that they could not have been intended by the legislature. 73 Am.Jur.2d *Statutes* § 195 at 392 (1974), *Magill v. North American Refractories Co.*, Del.Supr., 128 A.2d 233 (1956), *Nigro v. Flinn*, Del.Super., 192 A. 685, 688 (1937).

■ When we read the Coastal Zone Act as a whole it is apparent that to give § 7002(f) a literal interpretation would lead to such unreasonable or absurd consequences in light of the expressed statutory purpose in § 7001, that we are compelled to conclude the statute is ambiguous.

The General Assembly set forth the purpose of the Coastal Zone Act as:

It is hereby determined that the coastal areas of Delaware are the most critical areas for the future of the State in terms of the quality of life in the State. It is, therefore, the declared public policy of the State to control the location, extent and type of industrial development in Delaware's coastal areas. In so doing, the State can better protect the natural environment of its bay and coastal areas and safeguard their use primarily for recreation and tourism. It is further determined that offshore bulk product transfer facilities represent a significant danger of pollution to the coastal zone and generate pressure for the construction of industrial plants in the coastal zone, which construction is declared to be against public policy. For these reasons, *prohibition against bulk product transfer facilities in the coastal zone is deemed imperative.*

7 *Del.C.* § 7001. (emphasis added). In contrast to this strongly worded statutory purpose, § 7002(f) would literally prohibit only port facilities "for the transfer of bulk quantities of any substance from vessel to onshore facility or vice versa". But if a significant pollution potential existed, what difference would it make if the transfer was from vessel to vessel (barge from super collier) or from vessel to land to vessel (barge to land to collier). The danger of pollution and industrialization to the Delaware Coast is the same. To distinguish between transfers made vessel to vessel and those made vessel to land would lead to such irrational and absurd results that it compels our determination that the Coastal Zone Act is ambiguous.

■ Confronted with an ambiguous statute, we are faced with two possible constructions of the "from vessel to onshore facility or vice versa" language of § 7002(f). Appellees urge us to construe the language as illustrative rather than a limitation on the definition of "bulk product transfer facility" while Coastal Barge urges a literal reading of § 7002(f) as a limitation. We are mindful of the fact that the General Assembly used the words "bulk product transfer facility means" rather than "bulk product transfer facility includes" and that a term whose statutory definition declares what it "includes" is

more susceptible to extension of meaning by construction than where the definition declares what a term "means". 2A. Sutherland, Statutes and Statutory Construction § 47.07 (4th ed. 1984). Nonetheless, our holding is guided by what has been called the *golden rule of statutory interpretation.*

▆ The golden rule of statutory interpretation to which we refer is that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. 2A. Sutherland, Statutes and Statutory Construction § 45.12 (4th ed. 1984).

▆ As previously explained, to give § 7002(f) its literal meaning would lead to the irrational and absurd result of prohibiting only those facilities for the transfer of substances from vessel to an onshore facility or vice versa, regardless of the potential threat of pollution and industrialization to the Delaware Coast. We, therefore, adopt appellee's construction and construe the "vessel to onshore" language of § 7002(f) as illustrative of a bulk product transfer facility. We hold that port facilities for the transfer of bulk quantities from vessel to vessel are also included in the definition of "bulk product transfer facility" contained in § 7002(f).

▆ In sum, since Coastal Barge's proposed coal lightering operation will involve a "port or dock facility, whether an artificial island or attached to shore by any means", it will involve a prohibited "bulk product transfer facility" since we now construe the definition of such a facility to include those facilities for the transfer of bulk quantities from vessel to vessel.

Therefore, we find no error of law with the Board's conclusion, and the Superior Court's affirmance thereof, that Coastal Barge's proposed operations are prohibited by the Coastal Zone Act.

\*    \*    \*    \*    \*    \*

AFFIRMED.