**SINWELLAN CORPORATION et al.,
Plaintiffs,**

v.

**FARMERS BANK OF the State of DELA-
WARE, a corporation of the State
of Delaware, Defendant.**

Superior Court of Delaware,
New Castle.

Submitted June 27, 1975.

Decided Sept. 19, 1975.

Morton Richard Kimmel, Paul H. Spiller, Kimmel, Spiller & Bradley, Wilmington, for plaintiffs.

R. Franklin Balotti, Michael A. Meehan, Richards, Layton & Finger, Wilmington, for defendant.

## OPINION

O'HARA, Judge.

Sinwellan Corporation ("Sinwellan"), a foreign corporation, one of the plaintiffs in this action, maintained a business checking account with defendant Farmers Bank of the State of Delaware ("Farmers"). Farmers allegedly wrongfully dishonored certain checks, drawn on that account and signed by individual plaintiffs, P. A. Sinclair and Rena H. Matthews. Sinwellan and the individual plaintiffs sue for damages to compensate for alleged harmful publicity, loss of reputation, and embarrassment suffered as a result of the dishonor, as well as punitive damages, costs and interest. This is defendant's motion to dismiss the action against all plaintiffs.

■ Under 8 Del.C. § 383, a foreign corporation which has failed to register to do business in the State of Delaware, but is nevertheless "doing business", is prevented from maintaining an action until it has paid all fees, penalties and franchise taxes for the time it did business in the State without authority. The issue of whether a corporation has status to litigate is a question of capacity and must be determined at the outset of a case. *G. R. Sponaugle & Sons, Inc. v. McKnight Const. Co.*, Del.Super., 304 A.2d 339 (1973).

Sinwellan had advertised in this State, sold securities here, had had various credit transactions with residents of the State, provided transportation from Wilmington to its lodge, Great Oaks, Chestertown, Maryland, leased or purchased personal property in this State, in addition to maintaining the bank account which has become this source of this litigation.

■ The definition of "doing business" has been legislatively and judicially broadened for purposes of § 382 which governs service of process upon a foreign corporation which has not filed with the Secretary of State. This broad definition has been adopted as a protective measure to ensure that wrongdoing corporations cannot escape liability when their ties with the residents of a state are sufficient to cause an injury by claiming that those ties are not sufficient to allow the residents to sue the corporation within that state. However, the adoption of such a broad definition of "doing business", with respect to § 383, would prevent a corporation with, as here, basically peripheral contacts, from taking action when harmed within this State. The two sections serve different purposes and must be viewed as separate and distinct.

■ It is the quality and nature of the activities that are to determine whether a corporation is "doing business". *Mazzotti v. W. J. Rainey, Inc.*, 31 Del.Ch. 447, 77 A.2d 67 (1950).

■ The activities conducted in Delaware by Sinwellan were clearly incidental to the major purpose of operating and maintaining Great Oaks Lodge in Maryland. Even in *Klein v. Sunbeam Corp.*, Del.Supr., 94 A.2d 385 (1952), which involved a determination of "doing business" for § 382 purposes, there was, in addition to advertising, the active solicitation of business, and the filling of orders from retailers directly from warehouses maintained within the State of Delaware. Selling appliances was the main function of Sunbeam and consummating contracts to do so within Delaware constituted "doing business" here. See also the recent case of *Simpson v. Thiele, Inc.*, D.Del., 344 F.Supp. 7 (1972), which held that in order to be considered to be "doing business" under § 382, a corporation "must be transacting business generally in Delaware."

Here, Sinwellan can hardly be said to have been "transacting business generally" in Delaware by conducting the peripheral activities alleged. The definition of "doing business", being even stricter for the pur-

poses of § 383, it follows that Sinwellan should not be prevented from maintaining this action.

■ The second issue presented is whether the individual plaintiffs may bring the action. Under the Uniform Commercial Code, as adopted by Delaware, a "bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item". 6 Del.C. § 4-402. "Customer" is defined as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank;". 6 Del.C. § 4-104(1)(e).

A most persuasive authority for plaintiffs' position and a case which is factually close to the situation here presented, is *First National Bank of Springdale v. Hobbs*, Ark., 450 S.W.2d 298 (1970). There a corporation president, known to the bank, set up an account titled "Holiday Inn—Operating Account", the account to be used in the operation of a Holiday Inn by the corporation's lessee, who was made an authorized co-signer with either the president or his son-in-law. When checks drawn on that account, signed by lessee and wife, were wrongfully honored, the individual corporation president was allowed to sue as a "customer". The court emphasized the contact the president had had with the bank in opening the account, his designating who was to have authority to sign checks, and, in general, his directing the manner in which the account was to be used. Here, individual plaintiff P. A. Sinclair set up the Sinwellan account with Farmers. He dealt with Farmers in making arrangements to establish the account and directed who was to be authorized to draw upon the account. He was undoubtedly considered by the officers of Farmers to be their "customer". In addition, as was true in the *Hobbs* case as well, P. A. Sinclair had a personal account with Farmers. The factual basis for the individual claims for damages is that a criminal action was instituted against P. A. Sinclair, as a result of the wrongful dishonor of certain checks, with attendant publicity, expense, etc. The intimacy of the relationship between he and Farmers persuades this Court that he meets the test of "customer" found in *Hobbs* and, therefore, should be permitted to maintain the present suit.

■ Rena H. Matthews, a second individual plaintiff, is in a much different status. She had no part in establishing or directing the activity of the Sinwellan account, was not subjected to any criminal liability as a result of her signature appearing on several checks which were wrongfully dishonored, nor did she have a personal account with Farmers. There appears to be no factual or legal basis for treating her as a "customer".

The major case relied upon by defendant is *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966). That case held that the individual partner of a partnership could not recover for damage to his credit rating as a result of a wrongful dishonor of a check drawn on the partnership account. The case has not been followed on that point, and indeed has been called "an opinion that reads like a Tale of the Old West". White & Summers, Uniform Commercial Code, p. 566. This Court does not feel compelled to follow the *Loucks* case, not only because it has little subsequent case support, but also because of the nature of the injury allegedly suffered by P. A. Sinclair.

For the reasons set forth defendants' motion to dismiss against Rena H. Matthews should be granted, but as to P. A. Sinclair and Sinwellan Corporation, it should be denied.

It is so ordered.