HUDSON FARMS, INC., a corporation of the Commonwealth of Pennsylvania, Plaintiff Below, Appellant,

v.

John J. McGRELLIS, III, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 5, 1993.
Decided: Feb. 11, 1993.

Randall E. Robbins and Philip Trainer, Jr., Ashby & Geddes, Wilmington, for appellant.

Timothy M. Rafferty, Hockessin, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en banc.

WALSH, Justice:

In this appeal, we address the question of whether a foreign corporation must meet the registration requirements of 8 *Del.C.* § 371 before filing suit in Delaware. In dismissing the underlying action, the Superior Court ruled that such compliance was a pre-condition to the filing of suit and

could not be satisfied by registration while the action was pending. We conclude that the statutory scheme does not require dismissal of an action if compliance is effected during maintenance of the suit. Accordingly, we reverse.

## I

The relevant facts are undisputed. The appellant, Hudson Farms, Inc. ("Hudson Farms") is a Pennsylvania corporation with its principal place of business in West Grove, Pennsylvania. Hudson Farms is in the business of selling compost to mushroom growers for use as a growing medium. The appellee, John J. McGrellis ("McGrellis"), is the owner of a mushroom farm in Hockessin, Delaware, which he leased to Eugene Paloni, Rose Paloni and Domenic Paloni (the "Paloni's"), doing business as D & P Mushroom Farms, Inc. ("D & P Mushroom").

Between June and November, 1991, the Paloni's and D & P Mushroom purchased over $70,000 worth of compost from Hudson Farms for which no payment was made. On January 13, 1992, Hudson Farms filed a statement of claim for a mechanic's lien against the Paloni's, D & P Mushroom and McGrellis.[1] At the time it filed the mechanic's lien action, Hudson Farms was not licensed to do business in the State of Delaware and had not filed the documentation required under 8 *Del.C.* § 371.[2]

On April 7, 1992, McGrellis filed a motion for summary judgment, asserting that Hudson Farms was a foreign corporation not licensed to do business in Delaware and was, therefore, barred from bringing the mechanic's lien action. The parties argued McGrellis' motion before the Superior Court on May 12, 1992. The only issue addressed by the Superior Court was whether Hudson Farms was licensed to do business in Delaware at the time it filed the action. Having determined that Hudson Farms was not licensed at that time, the court held that 8 *Del.C.* § 383 barred Hudson Farms from bringing suit and "dismissed" the action without prejudice.[3] Al-

---

**1.** The Paloni's and D & P Mushroom are not parties in this appeal.

**2.** Section 371 of The Delaware General Corporation Law provides:

**§ 371. Definition; qualification to do business in State; procedure.**

(a) As used in this chapter, the words "foreign corporation" mean a corporation organized under the laws of any jurisdiction other than this State.

(b) No foreign corporation shall do any business in this State, through or by branch offices, agents or representatives located in this State, until it shall have paid to the Secretary of State of this State for the use of this State, $80, and shall have filed in the office of the Secretary of State:

(1) A certificate issued by an authorized officer of the jurisdiction of its incorporation evidencing its corporate existence. If such certificate is in a foreign language, a translation thereof, under oath of the translator, shall be attached thereto;

(2) A statement executed by an authorized officer of each corporation setting forth (i) the name and address of its registered agent in this State, which agent shall be either an individual resident in this State when appointed or another corporation authorized to transact business in this State, (ii) a statement, as of a date not earlier than 6 months prior to the filing date, of the assets and liabilities of the corporation, and (iii) the business it proposes to do in this State, and a statement that

it is authorized to do that business in the jurisdiction of its incorporation. The Statement shall be acknowledged in accordance with § 103 of this title.

(c) The certificate of the Secretary of State, under his seal of office, of the filing of the certificates required by subsection (b) of this section, shall be delivered to the registered agent upon the payment to the Secretary of State of the fee prescribed for his certificates, and the certificate shall be prima facie evidence of the right of the corporation to do business in this State;

\*　　\*　　\*　　\*　　\*　　\*

8 *Del.C.* § 371.

**3.** The penalty for a foreign corporation's failure to comply with § 371 is found in 8 *Del.C.* § 383 which provides:

**§ 383. Actions by and against unqualified foreign corporations.**

(a) A foreign corporation which is required to comply with §§ 371 and 372 of this title and which has done business in this State without authority *shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State* and has paid to the State all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this State without authority. This prohibition shall not apply to any successor in interest of such foreign corporation.

(b) The failure of a foreign corporation to obtain authority to do business in this State

though the court ruled that its decision was not "res judicata" and Hudson Farms could reinstitute suit when it complied with § 371, the practical effect of the Superior Court's ruling was to defeat Hudson Farms' cause of action because the time period for filing a mechanic's lien had expired.

Hudson Farms filed a timely motion for reargument on May 19, 1992, asserting that, as of May 4, 1992, it had qualified as a foreign corporation through registration with the Secretary of State and payment of all past license fees attributable to the period when it had conducted business in the State without registration. The Superior Court denied reargument, ruling, in effect, the Hudson Farms registration efforts were unavailing since its non-registered status at the time of filing suit was an uncorrectable defect.

## II

■ On appeal from a decision granting summary judgment, our scope of review is *de novo*.[4] *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1141 (1990). As a result, we review the entire record below, including the pleadings, depositions, where applicable, and other evidence appearing in the record. *Bershad v. Curtiss-Wright Corp.*, Del.Supr., 535 A.2d 840, 844 (1987). Where, as here, the issue on appeal is a matter of law, we decide whether the Superior Court erred in formulating or applying legal precepts. *Delaware Alcoholic Beverage Wholesalers, Inc. v. Ayers*, Del.Supr., 504 A.2d 1077, 1081 (1986).

■ In interpreting a statute the fundamental rule is to ascertain and to give effect to the intent of the legislature. *Coastal Barge Corp. v. Coastal Zone In-dustrial Control Board*, Del.Supr., 492 A.2d 1242, 1246 (1985). If there is no reasonable doubt as to the meaning of the words used, the statute is unambiguous and the Court's role is limited to an application of the literal meaning of the words. *The Stop & Shop Companies, Inc. v. Suzanne Quinlan Gonzales*, Del.Supr., 619 A.2d 896 (1993). In performing this analysis, the words in the statute are given their common, ordinary meaning. *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 230 (1982). When a statute is ambiguous and its meaning may not be clearly ascertained, "the Court must rely upon its methods of statutory interpretation and construction to arrive at what the legislature meant." *Coastal Barge Corp.*, 492 A.2d at 1246.

■ Hudson Farms argues that, since § 383 provides that a foreign corporation shall not *maintain* any action, it may be concluded that there is no bar to a corporation *initiating* an action. In support of its conclusion, Hudson Farms relies upon the ordinary, common meaning of the term "maintain." *Kofron*, 441 A.2d at 230. According to, *Webster's Third New International Dictionary* (1986), maintain means to "persevere in, carry on, keep up or continue." *Id.* at 1362. In addition, *Black's Law Dictionary* (5th ed. 1983) states that maintain "may mean to commence or institute." *Id.* at 859. Considering the meaning of the term in the context in which it is used, there is some measure of uncertainty as to the legislative intent and thus, we view the statute as ambiguous.

## III

■ When a statute is ambiguous the Court must apply accepted standards of

---

shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this State.

8 *Del.C.* § 383 (emphasis added).

**4.** Although the Superior Court deemed its action a dismissal, the issue of Hudson Farm's status was considered in response to a motion for summary judgment in which the court considered facts not present in the pleadings (*i.e.*, whether Hudson Farms was in compliance with § 371). Thus, the court's action is properly considered an entry of summary judgment in favor of the defendant, albeit without the effect of *res judicata. Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 7th Cir., 617 F.2d 468, 469 n. 2 (1980); *See also* 6 *Moore's Federal Practice* ¶ 56.-02[3] (2d ed. 1992).

statutory interpretation to arrive at what the legislature intended. *Coastal Barge Corp.*, 492 A.2d at 1246. Section 383, which was adopted in 1967, 56 Del.Laws C. 50 and 56 Del.Laws C. 186, § 30, is based on § 117 of the *Model Business Corporation Act* (1960) (the "MBCA" or the "Model Act"). Since it is presumed that the General Assembly is aware of existing law when it acts, *Giuricich v. Emtrol Corp.*, Del. Supr., 449 A.2d 232, 238 (1982), the counterpart provision of the MBCA may be viewed as the foundation for the Delaware statute. In addition, preexisting law and similar statutes from other jurisdictions which deal with comparable situations can be used as extrinsic aids in construing the legislature's intent. *Thomas v. Veltre*, Del.Super., 381 A.2d 245, 247 (1977).

The Model Business Corporation Act was substantially revised in 1984 by a revised Model Business Corporation Act (1984). Both versions [5] of the Model Act contain provisions requiring a foreign corporation [6] to qualify to do business in the state by obtaining a certificate of authority before attempting to conduct business. In parallel fashion, section 15.02 of the MBCA ("§ 15.02") and old § 117 of the pre–1984 version ("§ 117") further provide that non-qualified foreign corporations conducting business in the state are prohibited from maintaining a suit in the state court system until the corporation receives such a certificate. The difference between the two model statutes is that § 15.02 expressly provides that a non-qualified foreign corporation may initiate a suit in the state and the court may stay the proceeding until the corporation receives a certificate of authority. Section 117, on the other hand, does not contain such express language.

Although some jurisdictions have enacted statutes modeled after § 15.02, Section 383 of the Delaware General Corporation Law was adopted in 1967, at which time the pre–1984 version of the Model Act was still in effect.[7] Because Delaware's § 383 is parallel to § 117 it is helpful to consider interpretative decisions from states which have retained statutes modeled after § 117. The great majority of courts which have construed such statutes have concluded that a court may stay a suit commenced by a non-qualified foreign corporation until the foreign corporation obtains the requisite authority. *See* 6 ALR3d 326 (1966). However, a minority of such courts have held that such a corporation may not file suit before obtaining a certificate. *Id.*

Section 117 states, in part, that "[n]o foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority." In the official comment to § 117, the drafters made it clear that with this language they intended to allow a foreign corporation to remedy non-compliance after suit is filed. It is reasonable to assume that the Delaware General Assembly was aware of the official comment to § 117 at the time it adopted § 383. *Giuricich v. Emtrol Corp.*, 449 A.2d at 238. It is important to note, however, that the General Assembly, in drafting § 383, departed somewhat from the prototype language of § 117 in providing that a non-qualifying foreign corporation may not maintain a suit *"unless and until"* it obtained a certificate. Section 117, in contrast, states that such a foreign corporation is prevented from maintaining a suit "until" it obtains a certificate. McGrellis argues that this difference is significant and, indeed, dispositive.

It is not unreasonable to assume, as most courts do, that the word "until," as used in § 117, provides an inference that a proceed-

---

5. Hereafter we will refer only to the MBCA as it was revised in 1984, unless otherwise noted.

6. Section 1.40(1) of the MBCA defines a foreign corporation as "a corporation for profit incorpo-

rated under a law other than that of the law of this state."

7. Decisions based on statutes modeled after § 15.02 are of little value in construing § 383,

ing may be stayed until compliance occurs.[8] Use of the words "unless and until," however, may imply that compliance is a prerequisite that must be satisfied before a proceeding may be maintained at any stage, including the period of inactivity during which a proceeding is stayed.

Only five other states, New York,[9] Maine,[10] Oklahoma,[11] Kansas,[12] and South Carolina [13] have statutes containing the "unless and until" language of § 383. Decisions from these states may assist in the interpretation of § 383. *Giuricich v. Emtrol Corp.*, 449 A.2d at 238. Since the courts in neither Maine nor Oklahoma have been called upon to construe the "unless and until" language of their foreign corporation statutes, the discussion here is limited to cases from our own jurisdiction as well as New York, Kansas, and South Carolina.

This Court has never directly addressed the question of whether a foreign corporation must comply with § 383 before filing suit. In *Farmers Bank of the State of Delaware v. Sinwellan Corp.*, Del.Supr., 367 A.2d 180 (1976), we faced the issue of whether a foreign corporation had "done business" in Delaware for § 383 purposes. Although that case did not directly concern the present issue, subsequent Superior Court decisions have interpreted language from *Sinwellan* as indicative of this Court's belief that § 383 bars a non-qualifying foreign corporation from commencing an action.

*Sinwellan* involved a Maryland corporation, Sinwellan Corp. ("Sinwellan"), that was not qualified to do business in Delaware under § 371. Sinwellan maintained a checking account in Farmers Bank ("Farmers"), which was located in Delaware. Sin-

wellan sued Farmers for alleged wrongful dishonor of certain checks drawn on Sinwellan's account. Farmers moved to dismiss the complaint, invoking § 383. The Superior Court denied the motion because it found that Sinwellan had not engaged insufficient business to trigger § 383. *Sinwellan Corp. v. Farmers Bank of the State of Delaware*, Del.Super., 345 A.2d 430, 432–433 (1975).

On appeal, this Court ruled that *any* business conducted in Delaware is sufficient to trigger § 383 and concluded that Sinwellan "must comply with § 371 before it may maintain this action." *Sinwellan*, 367 A.2d at 183. We also noted that "noncompliance with § 371 bars a foreign corporation from maintaining 'any action' in the Courts of [Delaware.] That is the penalty." *Id.*, at 182. Although our decision merely recited the "maintaining" language of the statute, and did not expressly state that the violation of § 383 requires dismissal despite later compliance, subsequent decisions of the Superior Court have seized upon this language in holding that § 383 requires a foreign corporation to comply with § 371 before it files suit. *Eastern Air Control, Inc. v. Peninsula Construction Corp.*, Del.Super., C.A. No. 85L–JA–8, Bush, J., 1986 WL 14003 (Nov. 26, 1986); *Jennings Construction Co. v. Pettinaro Construction Co.*, Del.Super., C.A. No. 79C–AP–74, Christie, J. (Nov. 17, 1981).

Commentators on Delaware law uniformly are of the view that § 383 may not require dismissal of an action commenced by a non-qualified foreign corporation if the deficiency is cured after bringing suit. *See* 3 Ernest L. Folk et al., *Folk on the Delaware General Corporation Law*, 3d Ed. § 383.2 (1992); 2 R. Franklin Balotti & Jesse A Finkelstein, *Delaware Law of Cor-*

---

which contains no express language granting courts the option to stay the proceeding.

**8.** The majority of statutes modeled after § 117 follow the language of that section almost exactly; i.e., such statutes prohibit non-qualified foreign corporations from maintaining a suit "until" the corporation obtains authority.

**9.** N.Y.C.L.S.Bus.Corp. § 1312 (1986).

**10.** 13–A M.R.S. § 1214 (1981).

**11.** 18 Okl.St. § 1137 (1986).

**12.** K.S.A. § 17–7307 (1988).

**13.** S.C.Code Ann. § 33–23–140 (Supp.1985) (repealed 1988). Although the South Carolina legislature repealed § 33–23–140 and enacted a statute modeled after § 15.02 (*see* S.C.Code Ann. § 33–15–102 (1988)), decisions applying § 33–23–140 are helpful in this analysis.

*porations and Business Organizations,* 2d Ed. § 15.9 (1990); David A. Drexler et al., *Delaware Corporate Law and Practice,* § 44.03 (1992). However, the commentators are relying on *Stauffer Chemical Co. v. Keysor–Century Co.,* D.Del., 541 F.Supp. 239 (1982). In *Stauffer,* the District Court addressed the issue of whether a non-qualified foreign corporation could bring suit in a Delaware court before complying with § 371. Relying on New York case law and other general authorities, the court concluded that under § 383 a foreign corporation could remedy non-compliance after commencing suit. *Stauffer,* 541 F.Supp. at 241.[14]

Courts which have considered the "maintaining" language of foreign corporation statutes appear to have adopted a liberal stance in construing the term. In *Oxford Paper Co. v. S.M. Liquidation Co., Inc.,* N.Y.Supr., 45 Misc.2d 612, 257 N.Y.S.2d 395 (1965), the court concluded that § 1312 of the New York Business Corporation Law[15] ("§ 1312") allowed a non-qualified foreign corporation to file suit and thereafter obtain the required authorization. Section 1312, like § 383, states that a non-qualified foreign corporation shall not "maintain any action ... in this state *unless and until* such corporation has been authorized to do business in this state." § 1312 (emphasis added). However, the court did not specifically consider the fact that the legislature departed from the MBCA prototype by using the words "unless and until" in adopting § 1312.

The Supreme Court of South Carolina recently addressed the time of compliance in *Cost of Wisconsin, Inc. v. Shaw,* 292 S.C. 435, 357 S.E.2d 20 (1987). In that case, a Wisconsin corporation ("CWI") engaged in business in South Carolina without obtaining authorization to do so. In 1984, CWI filed a mechanic's lien and suit in South Carolina against a State resident and obtained the required authorization while the suit was pending. The defendant filed a motion to dismiss on the ground that CWI was a foreign corporation that did not have authorization to conduct business in the state of South Carolina.

Section 33–23–140 of the South Carolina Code,[16] like § 383, had provided that a non-qualified foreign corporation "shall not maintain any action, suit, or proceeding in this State *unless and until* such corporation" receives authorization. *Id.* (emphasis added). The court noted that "[c]ourts of other jurisdictions have construed statutes with language identical to that in issue here" and that "[a]lthough there is a split of authority, the prevailing view is to allow qualification of a foreign corporation after commencement of an action based on a concept of fairness." *Shaw,* 357 S.E.2d at 21.[17]

In *Kimbrough Roofing, Inc. v. Terrace Apartments, Inc.,* Kan.App., No. 57,168, Miller, J. (May 23, 1985) the Kansas Court of Appeals ruled that a Missouri corporation that was not qualified to do business in Kansas could continue an action against a Kansas corporation, although it had initially failed to register as a foreign corporation. The applicable Kansas registration statute, K.S.A. § 17–7307(a), provided that a non-qualified foreign corporation "shall not maintain any action or special proceeding in this state, *unless and until* such corporation has been authorized to do business in this state...." *Id.* (emphasis added). The court specifically noted that the issue before it was "whether a foreign corporation may timely [obtain authorization] after it has filed suit but before the suit is tried." *Kimbrough, supra.* The court relied, in part, upon *Stauffer* in deciding that "a foreign corporation which has not qualified to do business in the state can timely comply with the qualification statute after suit has been filed."

**14.** The Superior Court has rejected the reasoning of *Stauffer. Eastern Air Control, Inc. v. Peninsula Construction Corp.,* Del.Super., C.A. No. 85L–JA–8, Bush, J., 1986 WL 14003 (Nov. 26, 1986).

**15.** N.Y.C.L.S.Bus.Corp. § 1312 (1986).

**16.** S.C.Code Ann. § 33–23–140 (Supp.1985) (repealed 1988).

**17.** The statutes referred to in *Shaw* use only the word "until."

The majority of courts would permit a non-qualified foreign corporation to achieve registration during the pendency of the proceeding, notwithstanding the lack of such status when the litigation was commenced and regardless of whether the applicable registration statute contains the term "unless" or "unless and until." We agree with the rationale of those holdings that the word "unless," although imparting a condition, does not detract from the curative implication of the term "until."

## IV

Apart from the force of decisions of other jurisdictions, there are practical and policy reasons for permitting qualification during the pendency of litigation. Section 383 provides that no foreign corporation shall maintain an action in the State of Delaware unless and until it obtains authorization to do business in the State and *"has paid to the State all fees, penalties and franchise taxes* for the years or parts thereof during which it did business" in Delaware without authority. 8 *Del.C.* § 383. (emphasis added). As previously noted, § 1312 of the New York Business Corporation Law is virtually identical to § 383. In construing § 1312, the Appellate Division of the Supreme Court of New York commented that the:

> purpose of [§ 1312] is to regulate foreign corporations which are conducting business in New York so that they will not be on a more advantageous footing than domestic corporations. Specifically, the statute is designed to encourage foreign corporations to qualify to conduct intrastate business and to pay the State taxes levied on that intrastate business. The statute was not enacted to deny foreign corporations access to the courts of New York.

*Reese v. Harper Surface Finishing Systems*, 129 A.D.2d 159, 517 N.Y.S.2d 522, 524 (1987) (citations omitted).

A similar purpose can be imputed to the General Assembly in its adoption of § 383. The statute was designed, at least partially, as a revenue generating measure, a purpose we acknowledge as an aid in construing an ambiguity in any statute. *Application of Penny Hill Corp.*, 52 Del. 203, 154 A.2d 888, 891–892 (1959). While § 383 was intended to prevent a non-qualified foreign corporation from invoking the processes of the Delaware court system to the disadvantage of a Delaware resident or qualified entity as a penalty for refusal to pay the applicable franchise fee, the statute also provides an incentive for curing that delinquency. Qualified status can be achieved only if registration fees attributable to previous unauthorized activities are satisfied.

Requiring dismissal if a foreign corporation was not in compliance with § 371 at the time it commences litigation would interfere with the revenue enhancement purpose of § 383. Moreover, if the dismissal occurs after the running of the statute of limitations, as here, the exact opposite of legislative intent will occur—the foreign corporation will have been denied access to the courts and it will no longer have an incentive to pay its taxes. Because we perceive a clear legislative intent to encourage the payment of taxes attributable to previous unauthorized activities we are inclined to an interpretation of the states which permit a period of compliance after commencement of litigation.

## V

While the language in § 383 is admittedly ambiguous, the interpretation of similar statutes in other jurisdictions and recognition of the purpose underlying the adoption of § 383 strongly support a legislative intent to allow a foreign corporation not in compliance with § 371 to file suit in Delaware. Of course, the suit may not proceed or be further "maintained" until the foreign corporation is in compliance with all registration requirements.

The decision of the Superior Court is REVERSED.