IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SMITH & LOVELESS, INC.          :
                                :
            Plaintiff,          :
                                :
                                :    C.A. No. K15J-01162 WLW
      v.                        :    Kent County
                                :
JJID, INC.,                     :
                                :
            Defendant.          :

Submitted: April 5, 2016
Decided: July 15, 2016

**OPINION**

Defendant's Motion to Strike and/or Set Aside Foreign
Judgment Pursuant to 8 Del. C. § 383(a).
*Denied.*
Defendant's Motion to Strike and/or Set Aside Foreign Judgment
Pursuant to Superior Court Civil Rules 55(c) and 60(b)
*Denied.*

Patrick Scanlon, Esquire, of Law Offices of Patrick Scanlon, P.A., Milford, Delaware, attorney for Plaintiff.

Kevin A. Guerke, Esquire, of Seitz, Van Ogtrop & Green, PA., Wilmington, Delaware and Paul A. Logan, Esquire, of Powell, Trachtman, Logan, Carrle & Lombardo, P.C., King of Prussia, Pennsylvania; attorneys for Defendant.

WITHAM, R.J.

Before the Court are two separate motions related to the efforts of Plaintiff Smith & Loveless, Inc. ("S&L") to file the judgment of a Kansas court against Defendant JJID, Inc. ("JJID"). JJID first claims that S&L is barred from bringing any action in the courts of this State because S&L is doing business in Delaware and has not properly registered as a foreign corporation as required by 8 *Del. C.* § 371. JJID next claims the Kansas judgment should be set aside under Superior Court Civil Rules 55(c) and 60(b) because JJID was not subject to in personam jurisdiction in the courts of Kansas, a meritorious defense exists, and S&L made misrepresentations to the Kansas court to obtain the judgment. For the following reasons, JJID's motions to strike and/or set aside the judgment of the District Court of Johnson County, Kansas based on 8 Del. C. § 383 and to strike and/or set aside the judgment pursuant to Rules 55(c) and 60(b) are DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

JJID is a Delaware corporation with its principal place of business located in Delaware. S&L is a Kansas corporation with its principal place of business located in Kansas. In July 2014, S&L made a written offer to sell JJID a pumping station that was to be incorporated into a waste water treatment facility in Dover, Delaware. The offer stated that the pumping station would be shipped F.O.B. S&L's factory in Kansas,[1] and included a forum selection clause designating Kansas courts as having jurisdiction over any disputes. In September 2014, JJID sent a purchase order for the pumping station to S&L via fax. The purchase order

---

[1] F.O.B. (Free On Board) is a shipping term that determines the point where the seller transfers ownership to the buyer. Because the owner of the goods is responsible for damage or loss during shipment, the F.O.B. point determines liability.

contained terms and conditions on the reverse side, and there was no acknowledgment of S&L's written offer. S&L wrote JJID acknowledging the purchase order and stating that the acknowledgment incorporated the terms in the unexecuted sales agreement that was sent to JJID in July 2014. JJID contends the fully executed purchase order is the contract, and that the unexecuted sales agreement that S&L attempted to incorporate was nothing more than a proposed amendment that included materially different terms.

S&L wrote JJID on October 1, 2014, to note that they had yet to receive a reply from JJID acknowledging the incorporation of the terms of the unexecuted sales agreement. S&L wrote again on October 14, 2014, and stated that they had yet to receive a response, and that they were recognizing the unexecuted sales agreement as an amendment to the purchase order. They advised JJID that they were proceeding on the understanding that the purchase order, as amended by the unexecuted sales agreement, was the contract. JJID did not respond to S&L's October 14, 2014, letter.

S&L then fabricated and manufactured the pumping station in Lexena, Kansas. In December 2014, the pumping station was shipped F.O.B. S&L's factory in Kansas. JJID alleged that a fiberglass hood on the pumping station was damaged upon arrival. S&L alleged that in February and March 2015, they advised JJID to return the pumping station to Kansas for inspection and repair. Apparently, there was no more communication between the parties until S&L filed a breach of contract action in the Kansas courts.

On April 9, 2015, a breach of contract action was filed against JJID in the District Court of Johnson County, Kansas. On April 21, 2015, JJID was served with a summons and petition. JJID failed to file an answer or otherwise enter an appearance in the Kansas case. On August 10, 2015, the Kansas court entered an order finding JJID in default and scheduled a damages hearing for September 1, 2015. S&L claims (and JJID does not dispute) that JJID and its attorney were given advanced notice of the damages hearing. The damages hearing was held on September 1, 2015, with no appearance on behalf of JJID. The Kansas court entered a judgment against JJID in the amount of $92,607.50. On September 24, 2015, S&L filed to register the Kansas judgment with this Court. That filing led to the current motions by JJID to strike and/or set aside the default judgment.

## DISCUSSION

**I.  Motion of Defendant JJID, Inc. to strike and/or set aside foreign judgment for lack of legal capacity pursuant to 8 *Del. C.* § 383(a)**

**Title 8, Sections 371 et seq. do not prevent Smith & Loveless from filing a foreign judgment in Delaware.**[2]

Whether failure to register as a foreign corporation will prevent a judgment creditor from filing a foreign judgment in the State of Delaware is an issue of first impression for this Court. An attempt to enforce a foreign judgment implicates not only Delaware Statutory law, but Federal Constitutional law as well. Before passing judgment, the Court must consider whether exceptions contained in 9 *Del.*

---

[2] JJID has alleged that S&L has engaged in many transactions over the years that would subject S&L to the provisions of section 383; however, there is no specific accusation that any of the transactions are materially different from the transaction at bar, and the Court will therefore not consider the circumstances of previous transactions.

C. § 373 exempt S&L from the requirements of 8 *Del. C.* § 371, whether the filing of a foreign judgment is an "action" as contemplated by 8 *Del. C.* § 383, and whether State restrictions on a foreign corporation's ability to seek enforcement of a sister state's judgment would run afoul of the United States Constitution's Full Faith and Credit Clause.

*Smith & Loveless' transactions fall within the exceptions listed in*
*8 Del. C. § 373 thereby exempting S&L from the requirements of*
*8 Del. C. § 371*

Title 8, section 371(a) of the Delaware Code defines a "foreign corporation" as "a corporation organized under the laws of any jurisdiction other than this State." Section 371(b) prohibits a foreign corporation from doing business in Delaware without first having paid eighty dollars for the use of this State and having filed a certificate evidencing its corporate existence with the Secretary of State.[3] However, section 373(a) allows exceptions to these requirements under certain conditions.[4] S&L claims they are exempt from the requirements of section 371 because they meet the criteria of sections 373(a)(3) and 373(a)(4).

---

[3] 8 *Del. C.* § 371(b) states:
> No foreign corporation shall do any business in this State, through or by branch offices, agents or representatives located in this State, until it shall have paid to the Secretary of State of this State for the use of this State, $80, and shall have filed in the office of the Secretary of State:
>> (1) A certificate, as of a date not earlier than 6 months prior to the filing date, issued by an authorized officer of the jurisdiction of its incorporation evidencing its corporate existence. . . .

The statutory rate to be paid by a foreign corporation was increased from $50 to $80 in 1990. 67 Del. Laws ch. 229, § 1 (1990).

[4] 8 *Del. C.* § 373 states in pertinent part:
> (a) No foreign corporation shall be required to comply with §§ 371 and 372 of this title, under any of the following conditions:

Section 373(a)(3) exempts a foreign corporation from the requirements of section 371 if a contract for the sale of machinery or equipment is consummated outside of this State even though the contract requires the supervision of technical engineers or skilled employees during installation when such services are not locally available. The statutory language creates both temporal and substantive limitations. The temporal limitation limits the exemption to services performed during construction, erection, or installation, and the substantive limitation limits the exemption to "such services only."

In this case, S&L contacted JJID to solicit an order for a pump station, and JJID responded to the solicitation by sending a purchase order to S&L. The order was subject to the approval of S&L's corporate office in Lenexa, Kansas, and the pump station was shipped free on board ("FOB") S&L's factory in Kansas. The startup of the pump station required the supervision of persons with technical expertise that was not generally available in this area, and that supervision was supplied by S&L. If the transaction was limited to these facts, the transaction would fall squarely within the temporal limitation which limits the time frame to

---

\* \* \*

(3) If it sells, by contract consummated outside this State, and agrees, by the contract, to deliver into this State, machinery, plants or equipment, the construction, erection or installation of which within this State requires the supervision of technical engineers or skilled employees performing services not generally available, and as a part of the contract of sale agrees to furnish such services, and such services only, to the vendee at the time of construction, erection or installation;

(4) If its business operations within this State, although not falling within the terms of paragraphs (a)(1), (2) and (3) of this section or any of them, are nevertheless wholly interstate in character; . . .

that during which construction, erection, or installation services were performed. It would also fall squarely within the substantive limitation which limits services to only such services as construction, erection, or installation.

However, any services provided under S&L's one-year warranty would not be services provided to JJID *at the time of construction, erection, or installation.* The one year warranty could require that work be performed at any time within a one year period subsequent to the installation of the pump station. Therefore, the warranty services do not comply with the temporal limitation contained in subsection (a)(3). Moreover, warranty services are not construction, erection, or installation services and therefore do not comply with the substantive limitation contained in subsection (a)(3). Hence, S&L cannot fall within the exception contained in section 373(a)(3) because warranty services fail to meet the temporal and substantive limitations.

Section 373(a)(4) excepts a foreign corporation from the requirements of section 371 if the contract is wholly interstate in character. The United States Supreme Court has stated that "the right to make an interstate commerce contract includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made."[5] A comparison of two early United States Supreme Court cases illustrates the difference between services which are relevant and appropriate to the sales contract and services which become local in nature.

---

[5] *York Mfg. Co. v. Colley*, 247 U.S. 21, 24-25 (1918).

7

In *Browning v. Waycross*, the Court resolved the question of whether a contract involving the sales and installation of lightning rods was completely interstate in nature. The question before the Court was whether a local municipality had the right to collect a tax against a person who erected the lightning rods when the "price paid for the rods to the corporation includ[ed] the duty to erect them without further charge."[6] The person erecting the lightning rods claimed to be an agent of the manufacturer and therefore exempt from the local tax because the contract was one of interstate commerce. In a subsequent analysis of the *Waycross* opinion, the Court noted that because:

> the business of erecting lightning rods bore no relevant or appropriate relation to the contract made for the sale of such rods, it was decided that the contract for the erection of the rods did not lose its local character simply because it was made a part of an interstate commerce contract for the sale of the rods any more than would a contract for materials with which to build a house cause the building of the house to be a transaction of interstate commerce and not local business.[7]

The *Waycross* Court found the installation of the lightning rods "was wholly separate from interstate commerce, involved no question of the delivery of property shipped in interstate commerce, or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated."[8]

---

[6] *Browning v. Waycross*, 233 U.S. 16, 19 (1914).

[7] *York Mfg. Co.*, 247 U.S. at 24.

[8] *Waycross*, 233 U.S. at 22-23.

In *York Manufacturing Co. v. Colley*, the United States Supreme Court refined the elements of interstate commerce.[9] The plaintiff, a Pennsylvania corporation, entered into a contract with the defendant for the purchase of ice manufacturing machinery in Texas. The contract required the manufacturer to supply an engineer to supervise the installation of the machinery and perform startup tests. When a breach of contract action ensued, the defendant claimed the plaintiff had maintained an office and transacted business in Texas without complying with Texas statutes requiring a permit and therefore was not authorized to prosecute the action. The Court determined the contract was interstate in nature. It noted "there can be no doubt that the right to make an interstate commerce contract includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made."[10] The Court asked if the particular provisions of the contract, specifically the service of an engineer to assemble and erect the machinery at the point of destination and to test its efficiency upon delivery, were relevant and appropriate to the interstate sale of the machinery.[11] The Court noted that "[g]enerically this must be unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale."[12] The Court found that, unlike the

---

[9] *York Mfg. Co.*, 247 U.S. at 21.

[10] *Id.* at 24-25.

[11] *Id.* at 25.

[12] *Id.*

installation of lightning rods in *Waycross*, the services provided in *York* were an integral part of the contract.

In determining whether the contract in the case *sub judice* is interstate in nature, *York* instructs us to ask whether the services provided by S&L, including warranty services, are relevant and appropriate to the interstate sales contract. Unlike the installation of lightning rods in *Waycross*, the startup services provided by S&L do not take on an inherently local character. S&L's startup services require expertise that is not locally available. The intrinsic value of the pump station largely depends upon its being united and made operative as a part of a larger system. These services are therefore relevant and appropriate to the contract.

The warranty services are of a different nature than the installation services. The warranty services are not necessary to the process of uniting the pump station to the larger system, but that does not mean they are not relevant and appropriate to the contract. The pumping station was a custom designed piece of machinery, and JJID acknowledged that "[t]he warranty is an integral part of the 'typical contract.'"[13] If installation requires expertise not available in the local area, then it makes sense that repair work would require expertise not available in the local area. There is little doubt that the warranty work would take place in Delaware, but this fact does not *ipso facto* make the services local in nature. Generic labor used to install lightning rods is inherently local in nature. Generic labor used to build a house is inherently local in nature. However, specialized labor that is

---

[13] Reply Br. of Def. JJID, Inc. to Pl. Supplemental Mem. in Opp'n to Def. Mot. to Strike and/or Set Aside Foreign J. Based on 8 *Del. C.* § 383, at 9.

directly related to a sale in interstate commerce is not inherently local in nature. Because S&L has stated that it does not maintain offices or employees in Delaware, a contention that was not challenged by JJID, the Court must assume that any warranty work will be completed by S&L employees who will come to Delaware for the sole purpose of performing the warranty work before returning home. Moreover, as JJID noted in its reply brief, "[t]he warranty was a requirement of the City of Dover and of the JJID contract."[14] For these reasons, the Court finds that the warranty services to be provided by S&L are relevant and appropriate to the contract and not inherently local. The Court therefore finds that S&L is exempted from complying with section 371 because the contract is interstate in character.

*The filing of a foreign judgment under the Uniform Enforcement of Foreign Judgments Act as codified in 10 Del. C. § 4781 et seq. is not an "action" as contemplated by 8 Del. C. § 383.*

The Uniform Enforcement of Foreign Judgments Act ("UEFJA") is codified at 10 *Del. C.* §§ 4781 et seq. Section 4781 defines a "foreign judgment" as "any judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." Section 4782 allows a copy of any foreign judgment to be filed in the office of the prothonotary and orders that the prothonotary treat "the foreign judgment in the same manner as a judgment of the Superior Court of this State."[15] Section 4786 states that "[t]he right of a

---

[14] *Id.* at 9 n.7.

[15] 10 *Del. C.* § 4782 states:
> A copy of any foreign judgment authenticated in accordance with an act of Congress, or the statutes of this State, may be filed in the office of any

judgment creditor to bring an action to enforce a judgment, instead of proceeding under this subchapter, remains unimpaired." The language of the UEFJA differentiates between a filing under the Act and an action to enforce the judgment.

An action infers a case in controversy. In *Application of Buresch*, the Delaware Supreme Court stated that "[a] cause, or a cause of action, is generally defined as a dispute or controversy between litigants arising out of the infringement of a civil right or breach of a civil duty.[16] In *Buresch*, the Court was considering whether it had jurisdiction to hear an appeal from a Superior Court ruling on an application for a gun permit pursuant to 11 *Del. C.* § 1441. The Court held that it did not consider a judicial ruling on a license application to be a judgment entered in a civil case and thus found the Court did not have jurisdiction to hear the appeal. In thus finding, the Court noted:

> In considering applications for permits to carry concealed deadly weapons, the Superior Court is engaging in an administrative function delegated by the General Assembly. Over time, the Superior Court has exercised legislatively delegated administrative functions, *e.g.*, the appointment of members of school districts pursuant to 14 *Del. C.* § 505 (1953) (repealed), and the appointment of fence-viewers under 8 *Del. C.* ch. 57, § 3 (1893) (repealed). Such functions do not involve the resolution of disputes between private parties in the first instance.

---

> prothonotary of this State. The prothonotary shall treat the foreign judgment in the same manner as a judgment of the Superior Court of this State. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying, as a judgment of the Superior Court of this State and may be enforced or satisfied in like manner.

[16] *Application of Buresch*, 672 A.2d 64, 65 (Del. 1996) (citing *Black's Law Dictionary* 221 (6th ed. 1990)).

Nor does the exercise of judicial authority in such instances resolve controversies between litigants.[17]

The UEFJA refers to actions under the Act as a "filing" on numerous occasions.[18] Section 4782 allows a copy of any foreign judgment to be *filed* in the office of the prothonotary; Section 4785 notes that the fee for *filing* a foreign judgment is the same amount required for the filing of a civil action.[19] Section 4786 states that "[t]he right of a judgment creditor to bring an action to enforce a judgment, instead of proceeding under this subchapter, remains unimpaired." The statute clearly differentiates a filing from an action. Moreover, the *Buresch* Court's definition of an action requires a dispute or case in controversy and differentiates actions from administrative functions.

In the case *sub judice*, the case in controversy was settled when a judgment was entered in the courts of Kansas. S&L's attempt to register that judgment with the Delaware Superior Court is not an action. It is nothing more than a filing or an administrative function, and does not implicate judicial authority in a way that

---

[17] *Id.* at 65-66.

[18] *See, e.g.*, 10 *Del. C.* § 4782 titled Filing and Status of Foreign Judgments ("A copy of a foreign judgment . . . may be filed in the office of the prothonotary of this State" and "[a] judgment so filed ...."); 10 *Del. C.* § 4783 titled Notice of Filing ("At the time of the filing," "Promptly upon filing," and "after the judgment is filed."); 10 *Del. C.* § 4785 ("Any person filing a foreign judgment shall pay to the prothonotary the same amount as is required for the filing of a civil action in the Superior Court of this State.").

[19] 10 *Del. C.* § 4785 states:
> Any person filing a foreign judgment shall pay to the prothonotary the same amount as is required for the filing of a civil action in the Superior Court of this State. Fees for docketing, transcription or other enforcement proceedings shall be as provided for judgments obtained in the Superior Court of this State.

would resolve controversies between litigants. Thus, S&L's filing of its foreign judgment under the UEFJA is not an "action" as contemplated by 8 *Del. C.* § 383.[20]

### The use of 8 Del. C. § 383 to strike or set aside a sister state's judgment would violate the Full Faith and Credit Clause of the United States Constitution

Article IV, Section 1 of the United States Constitution states that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." "The United States Supreme Court has held that the full faith and credit obligation is 'exacting' and that there is 'no roving public policy exception to the full faith and credit due judgments.'"[21] In *Pyott v. Louisiana Municipal Police Employees' Retirement System*, the Delaware Supreme Court stated that a sister state's judgment is entitled to full faith and credit even if enforcing another state's judgment is repugnant to Delaware law and policy.[22] *Pyott* involved a derivative action, and the Court reasoned that "[u]nder this

---

[20] 8 *Del. C.* § 383 is titled "Actions by and against unqualified foreign corporations," and states:
> (a) A foreign corporation which is required to comply with §§ 371 and 372 of this title and which has done business in this State without authority shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State and has paid to the State all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this State without authority. This prohibition shall not apply to any successor in interest of such foreign corporation.
> (b) The failure of a foreign corporation to obtain authority to do business in this State shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this State.

[21] *Pyott v. La. Mun. Police Employees' Ret. Sys.*, 74 A.3d 612, 616 (Del. 2013) (quoting *Baker v. General Motors Corp.*, 522 U.S. 222, 232–33 (1998)).

[22] *Id.*

Court's precedents, the undisputed interest that Delaware has in governing the internal affairs of its corporations must yield to the stronger national interests that all state and federal courts have in respecting each other's judgments."[23]

The Delaware Supreme Court has acknowledged that section 383 "was designed, at least partially, as a revenue generating measure."[24] Section 383 was also intended "to prevent a non-qualified foreign corporation from invoking the processes of the Delaware court system to the disadvantage of a Delaware resident or qualified entity as a penalty for refusal to pay the applicable franchise fee."[25] However, just as Delaware's undisputed interest in governing the internal affairs of its corporations must yield to the stronger national interests, so too must Delaware's interests embodied in section 383 yield to the stronger national interest. The Court finds that requiring compliance with section 383 under the circumstances of this case would violate the Full Faith and Credit Clause of the United States Constitution.

## II. Motion of Defendant JJID, Inc. To strike and/or set aside foreign judgment pursuant to Superior Court Civil Rules 55(c) and 60(b)

### The Judgment of the District Court of Johnson County, Kansas, will not be Vacated Because Jurisdiction was proper under the

---

[23] *Id.*

[24] *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 221 (Del. 1993). As part of its analysis, the Court noted "the statute was designed, at least partially, as a revenue generating measure." The Court further noted that dismissal of a suit would deny a foreign corporation access to the courts and the corporation would then have no incentive to pay taxes for previously unauthorized activities. The Court held that foreign corporations not in compliance with section 371 could file suit in Delaware, but could not maintain the action until they were in compliance.

[25] *Id.*

## Kansas Long Arm Statute and the Alleged Misrepresentations to the Kansas Court Did Not Amount to Extrinsic Fraud

A foreign judgment filed in the Superior Court is treated in the same manner as a judgment of the Superior Court. A properly filed foreign judgment is therefore subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying a Superior Court judgment, and may be enforced or satisfied in a like manner.[26] Superior Court Civil Rule 55(c) allows for a default judgment to be set aside in accordance with Rule 60(b).[27] Rule 60(b) allows the Court to relieve a party from final judgment under certain circumstances, including fraud, misrepresentation, or misconduct, or if the judgment is void.[28] "The grounds for

---

[26] 10 *Del. C.* § 4782 states:

> A copy of any foreign judgment authenticated in accordance with an act of Congress, or the statutes of this State, may be filed in the office of any prothonotary of this State. The prothonotary shall treat the foreign judgment in the same manner as a judgment of the Superior Court of this State. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying, as a judgment of the Superior Court of this State and may be enforced or satisfied in like manner.

[27] Super. Ct. Civ. R. 55(c) is titled Setting Aside Default Judgment and states "[t]he Court may set aside a judgment by default in accordance with Rule 60(b)."

[28] Super. Ct. Civ. R. 60(b) states:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any

reopening or vacating a foreign judgment are limited to 'lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack of due process, or other grounds that make a judgment invalid or unenforceable.'"[29]

### *The District Court of Johnson County, Kansas, did have personal jurisdiction over JJID*

"It is fundamental that for a judgment to take effect in another jurisdiction under the Full Faith and Credit Clause, there must be first established personal jurisdiction over the defendant."[30] To determine whether personal jurisdiction existed in the case *sub judice*, the Court must look to the Kansas long arm statute. Like Delaware, Kansas applies a two-step analysis to determine whether a Kansas court has personal jurisdiction.[31] A Kansas court first determines if there is jurisdiction under the Kansas long arm statute as codified at K.S.A. 60-308(b). If 60-308(b) is satisfied, the Kansas court then determines whether the exercise of personal jurisdiction would comply with the due process requirements of the Fourteenth Amendment of the United States Constitution. The Kansas Supreme Court has held that "[t]he Kansas long arm statute is liberally construed to assert

---

other reason justifying relief from the operation of the judgment. A motion under this subdivision does not affect the finality of a judgment or suspend its operation.

[29] *E.R.G. v. Soda Rental Servs, Inc.*, 1988 WL 22346, at *2 (Del. Super. Mar. 4, 1988) (quoting *Matson v. Matson*, 333 N.W.2d 862, 867 (Minn. 1983)).

[30] *Id.* (citing *Lewis v. Hanson*, 128 A.2d 819, 831-32 (Del. 1957)).

[31] *Kluin v. American Suzuki Motor Corp.*, 56 P.3d 829, 834 (Kan. 2002).

personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution."[32]

Kansas statute 60-308(b) states that a person submits to the jurisdiction of the courts of Kansas when, *inter alia*, that person transacts any business in Kansas, or that person enters into a contract, express or implied, by mail or otherwise, with a resident of Kansas to be performed in whole or in part by either party in Kansas. The defendant does not need to be physically present in the State to transact business within the meaning of the statute.[33]

In *Aspen Products, Inc. v. Global Distributors, Inc.*, the plaintiff filed suit to recover contract damages after not being paid in full for paper plates that were manufactured in Kansas.[34] The Plaintiff, whose principal place of business was in Lenexa, Kansas, entered into an oral agreement with an Illinois corporation whose principal place of business was in Chicago. After receiving a bill for the manufacture of the paper plates, the defendant sent a partial payment to the plaintiff. The plaintiff sued for the balance in the courts of Kansas, and the defendant challenged jurisdiction. On appeal, the Appeals Court of Kansas noted that K.S.A. 60-308(b)(5) confers jurisdiction when a person enters an express or implied contract with a resident of Kansas when the contract is to be performed in whole or in part by either party in Kansas. The court found that (1) the paper plates ordered by the defendant were manufactured in Kansas, and (2) the

---

[32] *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987).

[33] *Envtl. Ventures, Inc. v. Alda Servs. Corp.*, 868 P.2d 540, 544 (Kan. Ct. App. 1994).

[34] *Aspen Prods., Inc. v. Global Distribs., Inc.*, 947 P.2d 49, 50 (Kan. Ct. App. 1997).

defendants made partial payment on the contract, and that the defendant had therefore subjected itself to the jurisdiction of the Kansas courts.

In the case *sub judice*, JJID sent a purchase order to the offices of S&L in Kansas, and the pump station was manufactured in Kansas. JJID claims they have never been present within the State of Kansas, but physical presence is not a requirement.[35] They claim they have never transacted business in Kansas, but they sent a purchase order to S&L in Kansas. JJID contends that the purchase order operated as an offer to purchase a pump station from S&L, and the signature of S&L operated as an acceptance.[36] Under JJID's scenario, the contract was formed in Kansas. JJID denied that the purchase order contained a forum selection clause, but that is irrelevant if Kansas is able to claim personal jurisdiction through their long arm statute. JJID also claims S&L has not proven that the pump station was manufactured in Kansas, but the Order of the District Court, Johnson County, Kansas, found that the contract "was performed in this State where the subject pump station (for which payment is sought herein) was custom built by Plaintiff Smith & Loveless, Inc." The case is much like the *Aspen Products* case in that a contract was reached between the parties, and after the manufacture of the ordered goods, payment was withheld. The holding of *Aspen Products* applies here. Because the pumping station was manufactured in Kansas, JJID is subject to personal jurisdiction in Kansas per K.S.A. 60-308(b)(5).

---

[35] *See, e.g.*, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (holding that a California court could exercise jurisdiction over a Texas insurance company that had never solicited or done business in California apart from a single insurance policy that became its responsibility after assuming the obligations of the insurance company issuing the policy).

[36] Def. Mot. to Strike pursuant to Super. Ct. Civ. R. 55(c) and 60(B)(4.6) at 11.

Because 60-308(b) applies, the Court must look to the second part of the analysis and ask whether jurisdiction complies with the due process clause of the Fourteenth Amendment. Both Kansas and Delaware use the minimum contacts analysis required by *International Shoe v. State of Washington, Office of Unemployment Compensation and Placement*[37] and its progeny.[38] In the landmark case of *International Shoe*, the United States Supreme Court found that a state may exercise personal jurisdiction over a person who is not physically present within the state when that person has "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[39] In subsequent decisions, the Court held that individuals must have "fair warning" that an activity may subject them to jurisdiction in another state. In *Burger King Corp. v, Rudzewicz*, the Court explained:

> [W]here the defendant 'deliberately' has engaged in significant activities within a State, . . . or has created 'continuing obligations' between himself and residents of the forum, . . . [the defendant] manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.[40]

---

[37] *Int'l Shoe v. State of Washington, Office of Unemployment Comp. and Placement*, 326 U.S. 310 (1945).

[38] *See Hazout v. Tsang Mun Ting*, 134 A.3d 274, 278 (Del. 2016); *Envtl. Ventures, Inc.*, 868 P.2d at 545.

[39] *Int'l Shoe*, 326 U.S. at 316.

[40] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

The relevant contacts between JJID and Kansas are as follows: (1) JJID sent a purchase order to S&L in Kansas after receiving a solicitation; (2) JJID entered into a contract with a corporation whose principal place of business is in Kansas; (3) under JJID's proffered scenario, the contract was formed in Kansas when the purchase order was signed by S&L; and (4) the pumping station ordered by JJID was designed and manufactured in Kansas. These contacts comply with the minimum contacts requirement of *International Shoe* and do not offend traditional notions of fair play and substantial justice. Moreover, these contacts show that JJID purposefully directed their activities to the forum state and derived benefits from those activities. JJID could reasonably foresee that any actions related to the pumping station might originate in the Kansas courts. Based on the foregoing, the Court finds that the exercise of personal jurisdiction by Kansas over JJID complies with the due process clause of the Fourteenth Amendment.

### *JJID had the opportunity to present any meritorious defenses to the District Court of Johnson County, Kansas*

Superior Court Civil Rule 60(b)(1) provides relief where the judgment was ordered as a consequence of "mistake, inadvertence, surprise, or excusable neglect."[41] When exercising its discretion, this Court pays deference to the policy favoring disposition of the case on its merits, and generally favors such motions upon almost any reasonable excuse.[42] When considering a motion under Rule 60(b)(1), the Court must first determine whether the conduct of the moving party

---

[41] Super. Ct. Civ. R. 60(b)(1).

[42] *Keith v. Melvin L. Joseph Const. Co.*, 451 A.2d 842, 846 (Del. Super. 1982).

21

can be characterized as the conduct of a reasonably prudent person.[43] If the Court determines that the moving party's actions can be so characterized, the Court will grant the motion if the moving party shows (1) the possibility of a meritorious defense, and (2) that the non-moving party will not suffer substantial prejudice.[44]

JJID's claim that the judgment should be set aside because they have a meritorious defense to S&L's claims is properly analyzed in the context of Rule 60(b)(1). To be successful on their motion, JJID must show that their conduct was that of a reasonably prudent person. In this case, JJID was hauled into the courts of Kansas. JJID could have responded to the summons in various ways. For instance, they could have defended the action in Kansas, or they could have entered a special appearance to contest jurisdiction and venue. However, JJID chose to ignore the summons. It appears that JJID did nothing until the default judgment of the District Court of Johnson County was filed with this Court. The Court finds that this was not the act of a reasonably prudent person and relief based upon JJID's claim of a meritorious defense is denied.

*S&L's alleged misrepresentation to the Kansas court does not render the default judgment void*

The definition of fraud, misrepresentation, or other misconduct in Rule 60(b)(3) is narrowly construed.[45] In the context of Rule 60, "courts typically confine the concept to serious cases of misconduct that threaten 'the integrity of

---

[43] *Id.* (citing *Cohen v. Brandywine Raceway Ass'n*, 238 A.2d 320, 325 (Del. Super. 1968)).

[44] *Battaglia v. Wilmington Sav. Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977).

[45] *See Smith v. Williams*, 2007 WL 2193748, at *4 (Del. Super. July 27, 2007).

the court and its ability to function impartially.'"[46] Thus, relief would be appropriate where a defendant with a valid legal defense was prevented from maintaining the defense by fraud, misrepresentation, or mistake.[47] The rationale sustaining this doctrine is stated as follows:

> The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law. Consequently a distinction is made between fraud, accident, mistake and the like relating to the subject-matter of the action and similar elements relating to the conduct of the suit. Fraud relating to the subject-matter is not of itself sufficient ground for relief. Where it relates to the conduct of the suit, as where it prevents a party from asserting his rights, there is no fair adversary proceeding, and equity will interfere. The courts commonly speak of the former class as intrinsic and of the latter as extrinsic, fraud, etc. Thus, it is generally said that it is extrinsic fraud, mistake and the like which are grounds for relief.[48]

Simply stated, relief will not be granted for fraud, misrepresentations, or misconduct that would be revealed in the normal judicial process, but will be granted when fraud, misrepresentations, or misconduct impairs the judicial process itself.

In this case, JJID claims S&L made misrepresentations to the Kansas court in that S&L misrepresented the terms of the contract. S&L allegedly represented to the Kansas court that JJID had assented to materially different terms such as forum selection and where JJID would take possession. The type of

---

[46]*Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008) (quoting *Smith*, 2007 WL 2193748 at *4).

[47] *Hudson v. Layton*, 107 A. 785, 787 (Del. Ch. 1919).

[48] *Id.* (quoting 5 Pomeroy's Equity Jurisprudence (2d. ed.) § 648).

misrepresentations that JJID claims S&L made to the Kansas court were not the type that would threaten the integrity of the court and its ability to function impartially. The Kansas court would have uncovered such alleged misrepresentation in the course of its normal judicial process if JJID would have defended the action. Because S&L's conduct did not affect the integrity of the Kansas court, and because JJID was not prevented from presenting their defense by fraud, misrepresentation, or mistake, the Court finds that relief cannot be granted under Rule 60(b)(3).

## CONCLUSION

JJID was summoned to appear before the courts of Kansas and ignored the summons at its own peril. As Plaintiff, S&L chose Kansas as the forum. JJID had the opportunity to defend the action or to challenge jurisdiction and venue in Kansas, but chose to allow the process to play out to its detriment. JJID now seeks to challenge the authority of the Kansas court or to prevent S&L from using the Delaware courts. JJID's challenge is unsuccessful. For the foregoing reasons, JJID's motions to strike or, in the alternative, set aside the foreign judgment are **DENIED.**

IT IS SO ORDERED.