# SUPERIOR COURT
### OF THE
## STATE OF DELAWARE

KATHLEEN M. MILLER

JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10501
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

January 22, 2026

G. Kevin Fasic, Esq.
Offit Kurman, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, DE 19801

Sanjay K. Bhatnagar, Esq.
Sanjay K. Bhatnagar, Attorney at Law
1601 Concord Pike, Suite 100
Wilmington, DE 19803

L. Vincent Ramunno, Esq.
Ramunno & Ramunno, P.A.
903 North French Street
Wilmington, DE 19801

John D. McLaughlin, Jr., Esq.
Ciardi, Ciardi, and Astin
1204 North King Street
Wilmington, DE 19801

> RE: *A&D Complete Services & Landscaping, LLC v. Horsepower Property Maintenance LLC*
> C.A. No.: N25C-06-233 KMM

Dear Counsel:

Third-party defendants each filed a Motion to Dismiss/Motion for Summary Judgment, which are scheduled for oral argument later this month. The Court has determined that oral argument is not necessary. This letter decision resolves the pending motions.

***Background***

Plaintiff filed this debt action against Horsepower Property Maintenance LLC ("Horsepower") alleging that plaintiff performed landscaping, snow removal, and

other services at a commercial shopping center in Middletown, where a Target store is located. Horsepower paid some invoices, but failed to paid plaintiff in full. Plaintiff seeks recovery for its unpaid invoices.

Horsepower filed a third-party complaint against Lenape Properties Management, Inc. ("Lenape") and Target Corporation ("Target").[1] This complaint alleges that Lenape is the property manager for the shopping center. Lenape entered into a Lawncare Maintenance Services Contract (the "Maintenance Agreement") and a Comprehensive Snow Removal Agreement ("Snow Removal Agreement") with Horsepower to perform maintenance and other services at the shopping center.[2] Pursuant to the agreements, Lenape agreed to pay Horsepower $2,475 a month for services under the Maintenance Agreement and $4,837.25 a month under the Snow Removal Agreement.[3] Both agreements authorized Horsepower to subcontract the services.[4]

Pursuant to the agreements, Horsepower subcontracted the lawn maintenance and snow removal services to plaintiff. Horsepower also subcontracted additional services requested by Lenape. Specifically, Horsepower engaged plaintiff to power

---

[1] D.I. 9.
[2] *Id.* ¶¶ 11, 18.
[3] *Id.* ¶¶ 17, 20.
[4] *Id.* ¶¶ 16, 21.

wash the Target store, paint yellow caution lines throughout the shopping center, and mulch the shopping center.[5]

Lenape failed to pay all of Horsepower's invoices, including invoices covering services performed by plaintiff.[6]  In April 2025, Lenape began questioning Horsepower about its licensing, demanded a W-9 (to be signed under oath), and leveled allegations of embezzlement, RICO violations, and other crimes.[7] Thereafter, Lenape threatened filing a civil action against Horsepower.  As a result of these exchanges, Horsepower terminated the agreements.[8]

The third-party complaint asserts breach of the Maintenance Agreement against Lenape (Count I), breach of the Snow Removal Agreement against Lenape (Count II), breach of the implied covenant of good faith and fair dealing against Lenape (Count III), a claim for contribution/indemnification against Lenape (Count IV), and a claim for quantum meruit against Target (Count V).

***The Motions***

Target and Lenape filed essentially the same Motion to Dismiss or alternatively, Motion for Summary Judgment[9] (collectively, the "Motion").  The

---

[5] *Id.* ¶ 24.
[6] *Id.* ¶¶ 24–25.
[7] *Id.* ¶¶ 25–28.
[8] *Id.* ¶ 28.
[9] D.I. 12, 15.

heart of the Motion is that the contracts,[10] the invoices,[11] notices to Target,[12] and communications[13] with Lenape were with "HP Property Maintenance LLC" not "Horsepower Property Maintenance LLC," the third-party plaintiff. Lenape contends that it paid HP Property Maintenance LLC, not Horsepower Property Maintenance LLC.[14] Thus, according to Lenape, the contract claims fail as a matter of law because it did not contract with Horsepower Property Maintenance LLC. Similarly, the quantum meruit claim fails because no services were provided by Horsepower Property Maintenance LLC.

Lenape relies on a license application for a business license from the Town of Middletown.[15] The application references HP Property Maintenance LLC. Horsepower Property Maintenance LLC does not hold such a license.[16]

Horsepower responds that "Horsepower Property Maintenance LLC" is the proper party as this is the entity's legal name.[17] It states that it uses "HP Property Maintenance LLC" as a trade name.[18] Horsepower contends that the use of "HP"

---

[10] D.I. 9 Exs. A–B.

[11] *Id.* Ex. C.

[12] *Id.* Ex. E.

[13] *Id.* Ex. D.

[14] Mot. Ex. III (sample check).

[15] *Id.* Ex. I.

[16] *Id.* Ex. II.

[17] After the Motion was filed, Horsepower filed an amended answer to the complaint to add its trade name. D.I. 17 ("***Horsepower Property Maintenance, LLC, is also known as and operates under the trade name HP Property Maintenance.***") (emphasis in original).

[18] D.I. 21 ("Esposito Affidavit"). Esposito often uses "HP" as shorthand for Horsepower Maintenance LLC. *Id.* ¶¶ 3–5.

was an oversight and not intended to refer to a separate entity. It argues that Horsepower Property Maintenance LLC performed the services, of which Lenape is aware.[19] The name on the Town of Middletown business license has since been corrected to reflect Horsepower Property Maintenance LLC.[20] Because there are disputes of fact, it argues that the Motion must be denied. Horsepower also requests leave to amend.[21]

In its reply, Lenape counters that use of HP cannot be an oversight because the Middletown business license application (filed in April 2025) was filed in the name of HP Property Maintenance LLC.[22] Even if the HP name was not intended to deceive, Lenape claims that use of HP Property Maintenance LLC was intended to hide that a former Lenape employee (who was fired for cause), awarded the contract to her boyfriend, Mark Esposito ("Esposito").[23]

Lenape also argues that the contracts are signed by "HP Property Maintenance LLC" and Horsepower is prohibited from relying on parol evidence to alter the terms of these unambiguous contracts.[24] Lenape points to the fact that HP uses "LLC" in

---

[19] D.I. 21 (Answering Brief) at 8–9. Lenape referred to Horsepower eight times in the email communications between the parties. Lenape also directly dealt with Esposito in connection with the contracts and work performed. *Id.* at 6.
[20] Esposito Affidavit ¶ 13.
[21] D.I. 21 at 12–14.
[22] D.I. 23 Ex. I.
[23] *Id.* at 2.
[24] *Id.* at 3–5.

its name, indicating it is a separate entity and further, HP provided a W-9 using "HP Property Maintenance LLC," which also evidences that HP Property Maintenance LLC is a separate entity.[25]

Finally, Lenape argues that the request to amend should be denied because even if HP was used as a trade name, Horsepower failed to file a fictious name certificate, as required by 6 *Del. C.* § 3101. Therefore, it is prohibited from doing business in Delaware. As such, an amendment would be futile.

### *Standard of Review*

When a party submits matters outside the complaint, a court may consider those documents, but the court will then convert the motion to a motion for summary judgment.[26] Lenape relies on documents which are not referenced in or incorporated into the third-party complaint, therefore, the Court will apply a summary judgment standard.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[27] The moving party bears the initial

---

[25] *Id.* at 4.
[26] *Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. 2012).
[27] Super. Ct. Civ. R. 56; *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99–100 (Del. 1992).

burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[28] The Court must view the record in a light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.[29]

*Analysis*

Lenape is correct that typically, only a party to a contract has standing to enforce it.[30] But the third-party plaintiff alleges that it is the party that contracted with Lenape, communicated with Lenape, and was paid by Lenape.

Further, Esposito testifies that the use of "HP" in the contracts (instead of spelling out "Horsepower") and the communications was an oversight, and not meant to indicate that it was an entity separate from Horsepower Property Maintenance LLC.

The April 2025 Town of Middletown application further supports Horsepower's position. Lenape relies on this application to show that the use of HP was not an oversight, as the application was filed in the HP name. The application,

---

[28] *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).
[29] *Merrill*, 606 A.2d 96, 99–100.
[30] *See United Health Alliance, LLC v. United Medical, LLC,* 2014 WL 6488659, at *3 (Del. Ch. Nov. 20, 2014) ("Well-settled within precepts of contract law is recognition that non-parties to a contract ordinarily have no rights under it.").

however, identifies the HP name as a "Trade Name of Business" and identifies the services as landscaping and snow removal.[31]

Additionally, Lenape acknowledged in its email communications that the checks payable to HP were deposited in Horsepower's bank account and plaintiff was paid by checks drawn on Horsepower's bank account.[32]

Viewing the record in a light most favorable to Horsepower, as the Court must, it is reasonable to infer that Horsepower Property Maintenance LLC and HP Property Maintenance LLC is the same entity.[33] Thus, a material dispute of fact exists. Lenape and Target have not shown that they are entitled to judgment as a matter of law.[34] Accordingly, the Motion for Summary Judgment is **DENIED**.

Turning to Horsepower's request to amend, the Court finds that it should be granted. Amendments are governed by Rule 15(a), which provides that when justice requires, amendments "shall be freely given." "In the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting

---

[31] D.I. 23, Ex. I.

[32] D.I. 9, Ex. D (threatening to subpoena bank records for "Horsepower LLC" and stating, "we can trace who took what and whoever took the most money out of Horsepower will be deemed the criminal mastermind or principal.").

[33] Lenape argues that the Court cannot consider Esposito's affidavit or other documents that contradict the plain terms of the contracts; that is, the Court cannot consider any document or argument that HP is a trade name for Horsepower as it constitutes impermissible parol evidence. Again, drawing all reasonable inferences in Horsepower's favor, it is reasonable to infer that it is the same entity as HP and summary judgment would be denied.

[34] *See Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (Only "[i]f the facts permit reasonable persons to draw from them but one inference, [then is] the question is ripe for summary judgment.").

leave to amend."[35] A request to amend may be denied where it would be futile, "in the sense that the legal insufficiency of the amendment is obvious on its face."[36]

Lenape argues that amending the third-party complaint to include allegations of HP being a trade name would not cure the deficiency in the third-party plaintiff's name. This is so, it argues, because having failed to file a fictitious name certificate, Horsepower is prohibited from doing business in Delaware. Lenape relies on 6 *Del. C.* § 3101. It cites no case law in support of its argument.

Section 3101 provides, in relevant part: "No person, firm or association shall engage in, prosecute or transact any business within the limits of this State" using a trade name without first filing a certificate disclosing the members of the firm or association.[37] The penalty for violating Section 3101 is a fine up to $100 or up to three months in prison, or both.[38]

While an entity that fails to file a fictious name certificate may be subject to penalties and may be precluded from raising certain rights, it does not preclude an

---

[35] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993).

[36] *Doe for Doe v. Snap, Inc.*, 2025 WL 2926161, at *9 (Del. Super. Oct. 15, 2025) (quoting *NACCO Indus., Inc. v. Applica Inc.,* 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008)).

[37] 6 *Del. C.* § 3101. The current version of Section 3101 is effective until February 2, 2026. 6 *Del. C.* § 3108, effective February 2, 2026, exempts limited liability companies from having to file fictious name certificates. It provides: "A corporation or limited liability company transacting business within the limits of this State under a trade name or title that does not disclose the legal name of the corporation or limited liability company **may, but is not required to**, register the trade name by filing a certificate…") (emphasis added).

[38] 6 *Del. C.* § 3106.

entity from contracting or deny it access to the courts.[39]  Accordingly, an amendment to address Horsepower's trade name is not futile.  Horsepower's request to amend the third-party complaint is **GRANTED**.[40]  Horsepower shall file any amended third-party complaint within 20 days of the date of this decision.

**IT IS SO ORDERED**.

/s/Kathleen M. Miller
Kathleen M. Miller, Judge

---

[39] *Carey v. Estate of Myers,* at *18 (Del. Super. July 1, 2015) *aff'd* 132 A.3d 749 (Del. 2016). When the General Assembly intended to limit standing for violation of certain statutory provisions, it has expressly stated. *See, Hudson Farms Inc. v. McGrellis,* 620 A.2d 215 (Del. 1993) (interpreting 8 *Del. C.* § 371 which prohibits a foreign corporation from doing business in Delaware unless such entity files the mandated certificate with the Secretary of State and § 383 which prohibits an entity in violation of Section 371 from maintaining an action in Delaware courts); *B&B Financial Srvs., LLC, v. RFGV Festivals, LLC,* 2019 WL 2006487, at *3-4 (Del. Super. May 2, 2019) (interpreting 6 *Del. C.* §§ 18-907 and 18-1107 which prohibit a limited liability company from maintaining an action while not in good standing).

[40] Lenape asserts no prejudice from the proposed amendment, and it has no legal authority for its futility argument.  Under these circumstances, the more efficient (and appropriate) manner to proceed would have been to stipulate to the amendment and file a motion if the complaint remained deficient.  Lenape and Target have used their opportunity to move for summary judgment.  The Court will not entertain any subsequent summary judgment motions on this issue.